C. F. GARDNER, Administrator, Appellee, v. ROBERT F. BECK, Appellant.

**LIMITATION OF ACTIONS:** Accrual in re Tort—''Married Woman's
1 Act.'' The cause of action which is available to the administrator of a woman who has died from a negligent or wrongful act is but a *continuance*, with added elements of damages, of the cause of action which accrued to the woman herself *when the negligent or wrongful act was inflicted upon her*. It necessarily follows that an action for such death is barred in two years from the date when the negligent or wrongful act was inflicted, and *not* in two years from the date of death, or date of appointment of administrator. (Sec. 3477-a, Suppl. Supp., 1915.)

**PROCESS:** Original Notice—Invalid Notice by Administrator. An
2 original notice describing the plaintiff as ''administrator'' of a named estate, and signed by a party as ''attorney for plaintiff,'' and the service of such notice, are a nullity when, at the time of the issuance of the notice and of the service thereof, *no administrator had been appointed for such estate*.

**PROCESS:** Original Notice—Jurisdiction Acquired. The service of an
3 original notice in one action manifestly does not, in and of itself, confer jurisdiction over the defendant as to another distinctly different action, even though both actions arose out of the same negligent act. So held where plaintiff acquired jurisdiction in an action for loss of *society* of his wife, and later, as administrator, in order to avoid the statute of limitation, claimed that the jurisdiction so acquired attached to an action for the *wrongful death* of the wife.

**JUDGMENT:** Conclusiveness—Ill Advised Motion to Dismiss. A mo-
4 tion to dismiss an action on the claim that the court had no jurisdiction, *inasmuch as the statute of limitation had already run against the claim*, made at a time when the court had full jurisdiction of the subject-matter and of the defendant, is very properly overruled; and such ruling is no impediment to a later pleading of the statute of limitation by the defendant.

*Appeal from Hamilton District Court.*—H. E. FRY, Judge.

SEPTEMBER 26, 1922.

REHEARING DENIED JANUARY 20, 1923.

ACTION by the administrator for damages for the wrongful death of the decedent, a married woman. The defenses were a general denial and a plea of the statute of limitations. There was a judgment upon a verdict for the plaintiff. The defendant appeals.—*Reversed*.

*Burnstedt & Hemingway*, for appellant.

*Healy, Thomas & Healy* and *F. J. Lund*, for appellee.

EVANS, J.—I. The defendant was a dentist, engaged in his profession at Webster City. The decedent, Katherine Gardner, became his patron. He performed certain dental work for her on September 5 and 7, 1917, consisting of certain bridge work. It is charged that he performed the work negligently, and that by reason of his negligence, infection occurred, which resulted in the death of Mrs. Gardner on November 19, 1917. It is claimed that the infection developed and manifested itself in the joints of the limbs, as arthritis. The plaintiff's cause of action is predicated upon Section 3477-a, Code Supplemental Supplement, 1915 (Compiled Code Section 7103). The one question presented for our consideration on this appeal is that of the bar of the statute of limitations. That question involves the further questions:

1. LIMITATION OF ACTIONS: accrual *in re* tort: "Married Woman's Act."

(1)   On what date did the statute begin to run?

(2)   On what date was the running of the statute tolled?

No other tolling is contended for than the beginning of the suit. The defendant contends that it began to run not later than September 7, 1917, the last date of the alleged negligence and injury; that suit was not begun in any other sense than that a petition was filed on September 19, 1919, to which the defendant entered an appearance on September 25, 1919.

The plaintiff contends: (1) That the statute did not begin to run until the appointment of the administrator, which was on September 17, 1919; (2) that, in any event, it did not begin to run until the death of the decedent, November 19, 1917; (3) that the statute was fully tolled by the serving of a

notice of suit on August 23, 1919, even though such service antedated the appointment of the plaintiff as administrator.

It is the general rule obtaining in this state that a cause of action for damages for injury done accrues *immediately* at the time of the wrongful injury. *Gustin v. Jefferson County*, 15 Iowa 158; *Steel & Johnson v. Bryant*, 49 Iowa 116; *Garrett v. Bicklin, Winzer & Co.*, 78 Iowa 115; *Sherman v. Western Stage Co.*, 24 Iowa 515; *Ogg v. Robb*, 181 Iowa 145. This is only saying that, when one suffers a personal injury through the wrongful act of another, he has an immediate right of action to recover therefor; and this is so even though the amount of his recovery as damages may be and usually is affected by future developments and future probabilities. Such future developments may add new elements of damage, and thereby enlarge the amount to which he may be rightfully entitled. These additional elements of damage, however, attach themselves to the original cause of action, and do not become of themselves independent causes of action. Unless, therefore, some provision is to be found in the terms of the statute above cited which creates a different rule, we must deem our past precedents controlling.

II. The contention for the plaintiff is that, by the terms of Section 3477-a, a *new* cause of action is created for the wrongful death of a married woman, and that it accrues, not to her in her lifetime, but to her administrator alone, and that, therefore, the statute of limitations could not begin to run until after her death. Such section is as follows:

"When any woman receives an injury caused by the negligence or wrongful act of any person, firm or corporation, including a municipal corporation, she may recover for loss of time, medical attendance and other expenses incurred as a result thereof in addition to any elements of damages recoverable by common law; and if such injury result in causing death, her administrator may sue and recover for her estate, the value of her services as a wife or mother or both in such sum as the jury may deem proportionate to the injury resulting in her death, in addition to such damages as are recoverable by common law; also loss of services and expenses incurred before death, if not previously recovered, and in such case of injury arising from willful, gross, or wanton negligence, punitive damages may be

allowed by the jury in addition to other damages herein provided, but in no event shall the amount exceed the sum of fifteen thousand dollars.''

The petition claims as damages the loss of services and earnings of the decedent during her sickness, and the medical and nursing expenses attending her sickness, and the loss of her services as wife and mother. The questions naturally arising upon the contentions of the parties may be stated briefly as follows:

(1) Was it the intent of the statute to create a separate and independent cause of action for the wrongful death of a woman, which cause of action should first inure to her administrator, and should be distinct and independent from any cause of action arising to the decedent in her lifetime for the same injury?

(2) Or was it the intent to add new elements of damage to a right of action already existing, either by statute or at common law?

The plaintiff contends for the affirmative on the first question; whereas the defendant contends for the affirmative on the second question.

While this statute is sometimes referred to as the ''married woman'' statute, it does not purport, by its own terms, to be so qualified. It is broad in its terms, and applies to *all* women. One of its practical effects, however, is that it recognizes the substantial value of the services of a ''wife or mother,'' and that such value may be considered as an element of damages, for her wrongful death, to be recovered by her estate through the administrator.

Before proceeding to a construction of the statute, a little legislative history must be noted. At common law, there was no right of action for a wrongful death. There was a right of action for damages for personal injury, but the death of the plaintiff, pending the suit, abated the same. This was the state of the law in England prior to 1846, at which time an act of Parliament was adopted, which is known in the law books as Lord Campbell's Act (9 & 10 Vict. c. 93), and which created a *new* cause of action for wrongful death. This cause of action accrued, in the first instance, to the administrator of the de-

cedent, and for the benefit of designated beneficiaries. The material part of such act was as follows:

"That whensoever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect, or de-fault is such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"Every such action shall be for the benefit of the wife, husband, parent, and child of the person whose death shall have been so caused, and shall be brought by and in the name of the executor or administrator of the person deceased, and in every such action the jury may give such damage as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought; and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided amongst the before-mentioned parties in such shares as the jury by their verdict shall find and direct."

The only element of damage to be considered in such action was the wrongful death. No account was taken therein of injuries sustained by the decedent, or of any loss or damage suffered by him during his lifetime. The act gave no right to include, as elements of damages in the administrator's suit, the damages suffered by the decedent during his lifetime. These elements and the cause of action therefor were all allowed to abate, as before, by reason of the death of the injured party before judgment thereon. No provision was made in the act for a survival of the decedent's cause of action or of the elements of damage therein accruing during his lifetime.

The substance of this statute was adopted in many of the states of the Union, and is now in force therein. The Federal Employers' Liability Act enacted by Congress was also patterned after this act. The contention for the plaintiff is that Section 3477-a was intended as the equivalent of this act. No legislation in this state has heretofore adopted the act in ques-

tion or its equivalent as a pattern. The end aimed at by Lord Campbell's Act was attained in this state by other and more practical forms of legislation. This was by providing for a *survival* of all causes of action, as provided by Sections 3443, 3444, and 3445 of the Code of 1897. These sections are as follows:

"Section 3443. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same.

"Section 3444. The right of civil remedy is not merged in a public offense, but may in all cases be enforced independently of and in addition to the punishment of the latter.

"Section 3445. Any action contemplated in the two preceding sections may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such action shall be deemed a continuing one, and to have accrued to such representative or successor at the time it would have accrued to the deceased if he had survived. If such is continued against the legal representative of the defendant, a notice shall be served on him as in case of original notices."

It will be seen from the foregoing that Lord Campbell's Act created a new cause of action for wrongful death alone, which accrued after the death of the decedent in favor of the administrator for the benefit of certain beneficiaries, and that it included no element of damages which had accrued to the decedent in his lifetime, and that it did not save from abatement the cause of action which had accrued to the decedent in his lifetime; whereas our statute causes a *survival* of the original cause of action accruing to the decedent in his lifetime, and enlarges the elements of damages so as to include wrongful death as a part thereof, and preserves the original action, unabated by the death of the injured party, and authorizes the administrator to pursue it to judgment. Under our statute, also, the administrator holds title to the cause of action for the benefit of the *estate,* though a certain class of beneficiaries of the estate are protected and given preference by an exemption statute. The distinction between the two statutes in their practical ef-

fect is fully considered in *M'Coullough v. Chicago, R. I. & P. R. Co.*, 160 Iowa 524.

From this general survey of the state of our legislation we pass to inquire what cause of action was available to a woman for personal injury prior to the enactment of Section 3477-a. For the purpose of such consideration, the "woman" of the statute falls into three classes: (1) The unmarried woman; (2) the married woman who had an independent business of her own; (3) the married woman whose sole occupation was the service of her family.

As to the first of these classes, the right of the woman to a cause of action for damages for personal injury was the exact equivalent of the right of a man to a cause of action for a like cause. She could sue for the damages, and include as elements thereof loss of time and services, expense of illness, and pain and suffering. In the event of her death pending suit, her right of action survived to her administrator, who could include in the same action, as an element of damages, a claim for wrongful death.

As to the second of these classes, she had the same right as a man, except that the element of loss of time and services were confined to such time and services as were lost from her independent business.

As to the third of these classes, she also theoretically had the same cause of action as a man, but the elements of her damages were greatly circumscribed by the fact that her time and services belonged, not to herself, but to her husband. She could maintain her action during life for pain and suffering and for expense incurred by her in her disability. In the event of her death pending suit, her administrator could prosecute the suit to judgment. Theoretically and nominally, he could also recover for her wrongful death; but the elements of damage which entered into such recovery for wrongful death were nominal only, because her estate, as such, had no claim for the loss of time and services which would have belonged to her husband, if she had lived. So far, therefore, as the first class is concerned, the statute may be construed either as confirmatory of her existing rights only, or as awarding to her an additional element of damages, if she comes within the designation of "mother." As

to the second class, it put her on an equality with the first class, and allowed her to recover for the same elements of damages. As to the third class, it put her upon an equality with those included in the first two classes. It put the wife on an equality with the unmarried woman, so far as loss of time and services is concerned. Up to this point, one manifest purpose of the act was to put every woman on an equality with man, so far as the elements of damages are concerned, in a suit for personal injury. The same purpose is indicated in the title of the act, which was as follows:

"An act for an award to a woman or her estate arising from an injury by negligence or wrongful act of any person, firm, or corporation, including a municipal corporation."

There is a fourth class indicated in the statute, which draws its membership from the other three classes. It is that of "mother." This is the one additional element of damages which appears to have been given to the first class above stated. The unmarried woman may be a widow and a mother. In that event, she takes the benefit of this statutory provision, which permits the services as a mother to be estimated by the jury at a money value.

As to the married woman, this provision is in line with the emancipation which, in the first part of the statute, allows her to recover in her lifetime for *loss of time* resulting from personal injury. Previous to the statute, this lost time would have belonged to the husband; likewise, the lost services as wife and mother, caused by her wrongful death. In other words, the earlier provision of the act which allows her to recover during her lifetime for loss of time, and the later provision which allows her administrator to recover for services as wife and mother, are responsive to each other, and are parts of the same thing, as applied to a married woman.

We are clear that this statute should not be construed as the equivalent of Lord Campbell's Act. On the contrary, it should be construed consistently with our survival statutes, and with the general state of our law relating to actions for personal injury. So construed, it establishes, in practical effect, an equality of right in all plaintiffs in actions for personal injury, and without regard to sex.

We hold, therefore, that it does not purport to create a new cause of action, to accrue in the first instance to the administrator of a woman, but that it does create new elements of damages. In so far as these additional elements of damages arise for wrongful death, they attach to the original cause of action arising in the lifetime of the decedent. The cause of action which passes to the administrator includes, not only damages for wrongful death, but, relating back to the date of the injury, it includes all damages ensuing therefrom during the lifetime of the decedent, as well as for her wrongful death. Out of such injury, only one cause of action accrues. It follows that the statute of limitations began to run on September 7, 1917.

III. Was the action begun within two years from the time of the injury? An administrator was appointed September 17, 1919, and not before. He filed a petition on September 19, 1919. It is claimed, however, that, prior to his appointment, he had served an original notice, as purported administrator, upon the defendant. It appears that, on August 23d, a paper was served by the sheriff upon the defendant, purporting to claim damages for her wrongful death, on behalf of C. F. Gardner, as administrator of the estate of Katherine. This notice was signed, not by the plaintiff, but by the purported attorney for the plaintiff. The contention for the defendant is that the paper was wholly nugatory and ineffective as the commencement of an action, or for the tolling of the statute. It is well settled that an invalid original notice is the equivalent of no notice, and that it cannot be effective either to confer jurisdiction or to toll the statute of limitations. *Jones & Magee Lbr. Co. v. Boggs,* 63 Iowa 589; *Phinney v. Donahue,* 67 Iowa 192; *Fernekes & Bros. v. Case,* 75 Iowa 152.

2. PROCESS: original notice: invalid notice by administrator.

Needless to say that no person has authority to assume to act as administrator for an estate prior to his appointment and qualification as such. If he does so, his acts are not binding upon the estate, though they may become so by later ratification, when deemed in the interest of the estate. It has been held that a person who is named the executor in a will had no power to employ attorneys at the expense of the estate, in advance of the probate of the will. *In re Estate of Smith,* 165

Iowa 614.   On August 23d, no one had authority to bind the future administrator of the estate.   It was essential to the validity of the original notice that it should be signed either by the proper plaintiff or by his attorney.   The original notice here served was not signed by the purported plaintiff.   It was signed by his purported attorney.   Who had authority to employ the attorney at that time?   The notice served was not binding upon the estate or upon the future administrator.   Could it be any more binding upon the defendant, unless first properly ratified by the future administrator?   If not effective until ratified, to give validity to the notice, could it toll the statute of limitations until so ratified?   It was not ratified prior to September 17th, and the statute had fully run before that date. If no one had purported to sign the original notice, its invalidity would doubtless be conceded.   In the absence of authority on the part of anyone to employ an attorney to represent the estate, we see no escape from the conclusion that the signature of the attorney was the equivalent of no signature, and therefore of no notice.

IV.   It is contended for the plaintiff, however, that C. F. Gardner began this suit in the first instance on his own behalf, and that he, in effect, substituted himself as administrator, and

3. PROCESS: original notice: jurisdiction acquired.

that this was permissible.   It appears from the record that Gardner purported to bring two actions at the same time.   One of them was in his own behalf, as husband, suing for the loss of the society of his wife, and for nothing more.   The other purported to be by himself as administrator, suing for the wrongful death.   It is argued that he could have brought this action in his own name, and could thereafter have obtained leave to substitute himself as administrator, as being the proper party.   This position may be conceded.   We have gone great lengths in permitting amendments in the form of substitution of parties.   *Myers v. Chicago, B. & Q. R. Co.*, 152 Iowa 330; *Lane v. Steiniger*, 174 Iowa 317.   If, in this case, the plaintiff had brought an action in his own name for the wrongful death of his wife, he might have obtained leave of the court to amend by substituting himself as administrator, as party plaintiff.   Such an amendment would not be barred by the statute of limitations, as we

have heretofore held, but the right to file the same would be subject to the judicial discretion of the court. The plaintiff did not pursue such course. He did not submit himself to the discretion of the court. He did not bring this action in his own name. The original notice which he served in his own behalf claimed for the ''society'' only. The petition promised in the original notice was never filed. He filed a petition as administrator later. The defendant appeared thereto, and pleaded the statute of limitations. The question, therefore, confronting the plaintiff is: Had he ever acquired jurisdiction of the defendant prior to the filing of his petition, so that he would have been legally entitled to take judgment against him in the event of default? It was not a case of bringing a defendant into court on service of original notice by a plaintiff who was mistaken as to his rights, and who afterwards got leave to amend by a substitution. It was simply a case where the right plaintiff filed his petition in court, without having, in advance, obtained jurisdiction of the defendant by the service of a notice. The period of limitation had expired. The defendant appeared and pleaded the statute. Does the fact that the plaintiff, in his individual capacity, served a valid original notice upon the defendant of another action in his own behalf, confer jurisdiction over the defendant in this action, which is entirely distinct from the other? The cause of action set up in the petition filed was separate and distinct from the cause of action described by plaintiff in his original notice on his own behalf.

We see no escape from the holding that no jurisdiction was conferred over the defendant in this particular action, until he entered his voluntary appearance therein.

V. It is next contended on behalf of plaintiff that the question here raised was adjudicated in a hearing on a motion filed by the defendant, and that the adjudication was not ap-

4. JUDGMENT: conclusiveness: ill advised motion to dismiss. pealed from, and is, therefore, conclusive. It appears that the defendant, by his counsel, purported to enter a special appearance, for the purpose of objecting to the jurisdiction of the court. This want of jurisdiction was predicated upon the fact that the original notice was invalid, and that the statute of limitations had expired before the entry of appearance, and even before the ap-

pointment of the administrator. The motion was overruled. Thereupon, the defendant answered, and pleaded the statute of limitations. The overruling of the motion did not settle the question of the statute of limitations. The statute of limitations could only be put in issue by a plea thereof, set up by the defendant. Without such plea, it would be deemed waived. Upon the hearing of the motion, it appeared that defendant's counsel had first entered a general appearance in the case, and had afterwards purported to enter a special appearance, with their motion to dismiss for want of jurisdiction. The general appearance entered in the first instance conferred full jurisdiction upon the court over the defendant. He could not thereafter escape from it by special appearance or otherwise. The most that can be said at this point is that the filing of the motion by defendant to dismiss for want of jurisdiction was ill advised, and that the motion was properly overruled. The court had jurisdiction of the subject-matter. It could acquire jurisdiction of the defendant either by service of notice or by voluntary appearance. The running of, the statute of limitations did not destroy the jurisdiction. It was open to the defendant to plead the statute of limitations as a defense. This would not be an attack upon jurisdiction. The power of the court to decide every question presented still remained. It had the power to overrule the plea of limitation. Its order would be reviewable as an error; but the error would not defeat jurisdiction.

The fact, therefore, that the defendant moved to dismiss for want of jurisdiction on the ground that the statute of limitations had run before jurisdiction was acquired, and that the court properly overruled such motion, did not make such an adjudication as could prevent the defendant from pleading the statute of limitations as an affirmative defense.

We see no escape from the conclusion that the period of the statute of limitations had fully run on September 7, 1919, and that the plea of the statute was good.

The judgment below must, accordingly, be—*Reversed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.