EILEEN J. PINZINO *et al.*, Plaintiffs-Appellants, *v.* VIRGIL J. "SONNY" VOGEL *et al.*, Defendants-Appellees.

Third District    No. 80-575

Opinion filed July 23, 1981.

Loren Thomson, of Thomson, Weintraub & Thompson, of Bloomington, for appellants.

John C. Mulgrew, Jr., of Davis & Morgan, and Jerold I. Horn, both of Peoria, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs appeal an order of the circuit court of Tazewell County which dismissed with prejudice their complaint for failure to state a cause of action. The question presented is whether those who take in default of the exercise of a general testamentary power of appointment are barred from redress for breaches of trust when the donee of the power has ratified any such breach. Counsel have advised us, and our own researches have fortified the proposition, that this is a question of first impression in this State. It is our opinion that such redress is available to these plaintiffs, and we reverse the trial court.

The factual situation is uncomplicated. Virgil W. Vogel died testate, leaving as his heirs his widow, Lela V. Vogel, defendant herein, and five children, Virgil J. Vogel and Paul W. Vogel, defendants herein, and Eileen J. Pinzino, Carol A. Moehle and Betty L. Hamann, plaintiffs herein. In his will the testator created a trust with two of his sons, Virgil and Paul, as trustees. Income for life from the trust was given to his widow, Lela, together with a power of appointment over the corpus. The power was exercisable only by her will and was unrestricted as to the person or persons, and as to the proportions, to whom and in which she might appoint. In default of the exercise of the power, the will directed that the trust corpus vest in the five children, equally *per stirpes*. The operative language in the will is as follows:

"Upon the death of my wife, Lela V. Vogel, this trust shall then and there terminate, and the trust assets remaining in said trust shall then and there vest in and be paid over, conveyed and distributed to such person or persons, or to the estate of my said wife, free of said trust, in such manner and in such proportion as my said wife may designate and appoint in and by her last will and testament referring to this power and purporting to exercise the same, said power of appointment hereby conferred on my said wife to be exercised by her exclusively and in all events. If my said wife shall fail to exercise that power of appointment, then, and in that event, said trust assets shall vest in and be paid over and distributed to my children, in equal shares per stirpes, free of the trust herein created. The trustees may rely upon an instrument admitted to probate in any jurisdiction as the last will and testament of my wife, and if they have no written notice of the existence of such a will within a period of three months after her death, the trustees may assume she died intestate."

The complaint alleges that Virgil J. Vogel controls a corporation known as Vogel's Inc., in which the trust owns 703 shares (which Virgil votes as trustee), Virgil in his own right owns 544 shares, and the plaintiffs own 141 shares each. Further allegations are that Virgil has committed breaches of trust by lending trust funds to the corporation and by extending the time for payment of those loans, all the while acting as trustee on the one hand and as chief executive officer, majority stockholder and director of the corporation on the other. Additional breaches were alleged in that Virgil operates the corporation for his personal gain, does not observe prudent business practices, does not call meetings of the board of directors and does not consult with the other directors.

Lela, the life beneficiary of the trust and the donee of the power of appointment, filed an affidavit in which she set forth that she had ratified all the actions taken by Virgil as trustee. Thereupon, the trial court dismissed the complaint with prejudice.

Defendants' principal reliance is upon a comment found in Restatement (Second) of Trusts §216(1), comment *h* (1959), which interprets the law as follows:

> "*Consent by a beneficiary having a general power of appointment.* Where a beneficiary has a general power of appointment, even though it is a power to appoint by will alone, his consent to a breach of trust precludes the persons to whom he makes an appointment from holding the trustee liable for the breach of trust. So also, even if the beneficiary who has a general power of appointment fails to exercise the power, the persons taking in default of appointment are precluded by his consent from holding the trustee liable."

In the absence of prior authority, defendants urge us to adopt this doctrine. We do so, but only in part.

Since the principle purports to apply only the general powers, it is necessary first to examine the power given in the instant case to determine its nature.

In addition to other classifications not pertinent here, powers are ordinarily categorized as either general or special. In 72 C.J.S. *Powers* §6 (1951), it is said:

> "[A] power is said to be general when it is exercisable in favor of any person whom the donee may select, and special, limited, or particular when it is exercisable only in favor of persons or a class of persons designated or described in the instrument creating the power."

In the past questions have arisen as to whether a power exercisable only by will is general or special. Obviously under such a power the donee would be unable to appoint to himself. Professor Simes has noted:

"On the question of whether or not a power to appoint by will only is necessarily special, the cases are not in harmony. Strictly speaking, of course, the donee cannot appoint to himself, even though he has a general power to appoint by will. But he may appoint to his estate or to his creditors. It is generally said that the mere fact that there is a condition precedent to the exercise of a power does not make it special, and that the restriction which makes a power special is one concerned with the persons who are to take under it, and not the conditions under which it is to be exercised." 1 Simes, the Law of Future Interests §246 (1936). Compare Annot., 9 A.L.R. 2d 595 (1950).

While there appears to be no prior authority in Illinois on the specific point, two cases follow the rule announced by Simes. In *In re Estate of Breault* (1963), 29 Ill. 2d 165, 167, 193 N.E.2d 824, 825-26, the conferral of the power was in the following form:

" 'Upon the death of my son, Oscar J. Breault, the property of the trust estate shall be distributed according to the provisions and terms of the Last Will and Testament of my said son, Oscar J. Breault, and if he shall fail to execute a Will or such Will should not be admitted to probate, I hereby direct distribution of said estate in the following manner:' *etc.*, naming three charities which were to share equally."

The supreme court referred to this as a "general testamentary power."

In *In re Estate of Schaaf* (1974), 19 Ill. App. 3d 662, 312 N.E.2d 348, the testamentary provisions were somewhat more lengthy. The testator's wife was given a power of sale over certain property with directions that the proceeds of sale be given to the organizations in which the wife knew the testator was interested in contributing. Any residue not sold during the lifetime of the wife was to be sold at auction and the proceeds distributed among seven named charitable organizations. In analyzing the power the appellate court said: "It is obvious from an analysis of Item 6 that the testator intended to create a special, exclusive, testamentary power of appointment and not a trust or a power in trust." 19 Ill. App. 3d 662, 664, 312 N.E.2d 348, 350.

■■ ■ We are therefore persuaded that Illinois follows the general rule that a power exercisable by will only is still a general power and that a power becomes limited only when the appointees are limited. It follows that in the instant case Lela Vogel possessed a general power of appointment.

The next question to be settled is the standing of the plaintiffs to bring the suit. Since Lela Vogel is still alive, it cannot be determined who her appointees will be. All that is known is that the plaintiffs, or their heirs or devisees, will take an *aliquot* portion of the trust corpus upon failure of Lela to exercise the power in her will.

We believe that this is sufficient to allow plaintiffs to bring the suit. Illinois has recognized the standing of contingent beneficiaries in analogous situations. (*Barnhart v. Barnhart* (1953), 415 Ill. 303, 114 N.E.2d 378; *Burrows v. Palmer* (1955), 5 Ill. 2d 434, 125 N.E.2d 484; *In re Will of Hartzell* (1963), 43 Ill. App. 2d 118, 192 N.E.2d 697.) Each of these cases was concerned with contingent remaindermen surviving a life tenant. In *Barnhart* the supreme court stated the rationale to be:

> "We believe the better rule to be that while a contingent remainderman should not be denied the right to bring an action against the trustees regardless of circumstances and merely because his interest is remote and contingent, nevertheless, the scope of the right should be limited to that which is necessary to protect his possible eventual interest, *i.e.*, the protection and preservation of the trust *res*. It should be afforded only where waste, mismanagement or dissipation of assets appear or can be shown." 415 Ill. 303, 323, 114 N.E.2d 378, 388.

■■ While some courts in other jurisdictions have held that a life beneficiary of a trust possessing a general power of appointment has the equivalent of a fee (*e.g.*, *In re Perkins' Trust Estate* (1934), 314 Pa. 49, 170 A. 255), we are not persuaded that this is sound law when the power to appoint is by will alone. The imposition of a trust is a *prima facie* indication that the testator desired the preservation of the assets when the donee of the power may exercise it only by will. Otherwise, an outright gift of the assets, or a power exercisable *inter vivos*, would appear more natural.

Furthermore, the following appears in the will:

> "SECOND: * * *, I give, devise and bequeath to the TRUSTEES hereinafter named, in trust for the uses and purposes hereinafter set forth, * * *.
>
> I. The Trustees shall pay the net income from the Trust to my wife, LELA V. VOGEL, for and during her natural life, in monthly or other convenient installments, but at least semiannually. In the event that my said wife, shall be in need for funds in excess of the income derived from the Trust estate in order to provide for her reasonable care, support and medical expenses, then said Trustees are authorized in their discretion to invade the principal of the Trust estate for said purposes in such amount as they in their discretion and from time to time may deem necessary or advisable. Such invasion on principal need not be restored or otherwise made good from later income accruing to my said wife, but shall be and remain a general deduction from the corpus of the Trust estate."

This being the only language in the will permitting invasion of the

corpus, it follows that the assets could not be dissipated for any purpose other than the "care, support and medical expenses" of Lela. Such language reinforces the concept of preservation implicit in the creation of a trust arrangement.

■■ We hold that the plaintiffs here, as contingent appointees under the general power, have sufficient standing to question the alleged waste, mismanagement and dissipation of the assets. We offer no opinion as to the validity of their claims. That can only be determined on trial.

We turn next to the application of the Restatement doctrine. The arguments pro and con are fully set forth in 3 Scott, The Law of Trusts §216.2 (3d ed. 1967). After discussing *Perkins*, Professor Scott says:

> "In numerous other cases it has been held that the consent of the donee of a general power of appointment precludes his appointees from surcharging the trustee. It is immaterial whether the donee of the power of appointment is a beneficiary of the trust; it is immaterial whether he is the settlor himself, or one of the trustees, or a third person; and it is immaterial whether the power is to appoint either by will or by deed, or to appoint by will alone. In any event his appointees take through the exercise of the power by the donee and are bound by his consent.
>
> Whether the consent of the donee of a general power of appointment is binding on those who take in default of appointment is not quite so clear. * * *
>
> Suppose, however, that the persons who take in default of appointment do not consent. Are they bound by the consent of the donee of the power if he dies without having exercised the power? Are they precluded by his consent to a breach of trust from holding the trustee liable? In a case decided by a lower court in Pennsylvania [*Estate of Reyburn* (1942), 43 Pa. D & C. 85] it was held that they were not precluded. * * * It would seem that it would be better to hold that no distinction should be made between those who take by appointment and those who take in default of appointment. The consenting beneficiary had an interest equivalent to a fee, and it would seem that his consent should bar not only himself but also the other beneficiaries whose interests were wholly dependent on his decision." Scott, at 1739-41.

■■ The parties have cited to us the various decisions cited by Scott in support of his thesis, and with all due deference to that most learned expert in the field, we disagree that those who take in default of appointment are bound by the actions of the donee of the power in ratifying a breach of trust.

Our reasons are two-fold: First, as we have already indicated, we do not believe that a trust coupled with a general testamentary power of

appointment is the "equivalent of a fee." This appears to be the predicate for Professor Scott's and the Restatement's doctrine.

Second, it is apparent that those who take in default of the exercise of the power take from the testator, not from the donee of the power. We agree that those who take by the exercise of the power are estopped by the actions of the donee. No one can take a better title than that of his grantor, but the actions or acquiescence of one beneficiary are immaterial and not binding on the others. *Hartzell.*

Since we reverse the trial court's order of dismissal, the issue raised by the plaintiffs concerning its refusal to allow amendment becomes moot.

For the foregoing reasons, the order of the circuit court of Tazewell County dismissing plaintiff's complaint with prejudice is reversed and the cause is remanded for further proceedings in accordance with the views expressed herein.

Reversed and remanded.

TRAPP, P. J., and GREEN, J., concur.