In re the Matter of the Trust of Edwin **WILLCOCKSON, Deceased,**

**The Merchants National Bank of Cedar Rapids, Appellant,**

**and**

**Mary Ann Morrow, Cross-Appellant.**

No. 83–655.

Court of Appeals of Iowa.

March 26, 1985.

Richard S. Fry, Diane Kutzko, and Thomas M. Collins of the Shuttleworth & Ingersoll, Cedar Rapids, for appellant.

Iris E. Muchmore of Simmons, Perrine, Albright & Elwood, Cedar Rapids, for cross-appellant.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

OXBERGER, Chief Judge.

This appeal is brought by the bank administering two trusts and the cross-appeal is brought by the daughter of the settlor of the trusts. Numerous alleged errors of the court are presented on appeal. We affirm in part and reverse in part.

This litigation began when the decedent, an attorney, created a trust which, upon his death, was to be divided into two equal trusts. One trust was called the "Laura L. Willcockson Trust" created for the benefit of his wife, and which we will refer to as the marital trust. The other was called the "Edwin Willcockson Trust" and we will refer to it as the residuary trust. The marital trust provided for payment of income and principal to Edwin's wife in the sole discretion of the trustee through her life. She was also given a general power of appointment to dispose of the trust assets in her will to whomever she chose. If she did not exercise the power, the assets would pour over into the residuary trust. The residuary trust indicated income or principal would be paid to the wife and children, or children of a deceased child, in the discretion of the trustee. Upon the death of the wife, Laura, the trust would be divided into equal shares, with one share for each child or the children of any deceased child. The share of the trust belonging to the child is to be distributed outright when the child reaches age thirty-five, if the wife is not surviving.

Edwin died October 4, 1972, leaving his wife, Laura, and three children, James E., Kleber E., and Mary Ann Morrow. Merchants National Bank in Cedar Rapids was named as both executor and trustee.

According to Merchants, soon after administration of the trusts began, family members began exerting pressure upon the bank to terminate the trusts and distribute the assets. The record reflects a number of letters from family members to this effect. The bank decided to transfer management of the farms, which made up a large part of the marital trust, to the wife, Laura. Merchants further asserts that after several years of pressure from the family and the involvement of several attorneys, it was contacted by a Chicago attorney who allegedly claimed to be representing all members of the family. The attorney indicated he would bring litigation if the trusts were not terminated. Merchants agreed to a plan to terminate the marital trust and transfer the assets to Laura, believing all four family members were in agreement. It also agreed to request approval for successor trustees to be appointed to the residuary trust, including Laura, her children, and a third person. Mary Ann disputes that she ever agreed in any manner to termination of the marital trust or appointment of successive trustees to the residuary trust.

The assets of the marital trust were transferred to Laura in March 1980 and Merchants filed an application for permission to withdraw as trustee of the residuary trust. Mary Ann filed an objection to the application in June 1980, which is the basis of this appeal.

On May 21, 1981, the court allowed Merchants to resign as trustee of the residuary

trust, but denied the family members' request they be appointed trustees. It instead ordered another bank to be appointed trustee. The court further ordered Merchants to file a final report. That report was filed June 3, 1981. Among objections filed were those of Mary Ann, who claimed the transfer of the marital trust by Merchants to Laura was improper. She also claimed the bank improperly paid estate administration expenses of $53,671 solely from the residuary trust and improperly listed a $10,000 bond as an asset of the estate. The bond had been kept by Edwin with two other bonds, in a safety deposit box in his daughter's name, but Edwin kept the key. On the day of his funeral Mary Ann went to the office where the key was kept, and she and her brother each took one of the three bonds placed there.

On December 7, 1982, the court ruled in favor of Merchants with the exception that it found the termination of the marital trust was improper. It ordered the value of those assets at the time of the termination, of $1,068,012, be reinstated, and that Merchants should be held accountable for any deficit. A motion under rule 179(b) was filed by Mary Ann and denied.

A number of issues are raised by appellant and cross-appellant. Appellant asserts: (1) that terms of the trust instrument were not violated by a transfer of the trust assets to decedent settlor's widow and that consent of the widow to the transfer bars any claim by a residuary beneficiary; (2) that cross-appellant objector is not an interested party under Iowa Code section 633.122 with standing to object when her interest in the trust is contingent upon the widow's failure to exercise a general power of appointment; (3) that the evidence was insufficient to show that any damage resulted from transfer of the trust assets; (4) that any determination of damages that may be required should be delayed until the widow's death and should, in any event, be the subject of an evidentiary hearing in district court; (5) that the remedy should be modified; and (6) that if it is determined on appeal that the trustee did not act improperly, trustee's fees and attorney fees should be awarded. Cross-appellant asserts: (1) that the trial court erroneously placed on objector the burden of proving that assets had been improperly allocated between two trusts and that, in any event, the allocation of a farm property was not in accordance with the terms of the trust; (2) that the costs of estate administration should not have been paid solely from one of two trusts and that the trial court erroneously placed on objector the burden of establishing her claim to that effect; (3) that a $10,000 bond was an asset of an *inter vivos* trust, that an agreement with the trustee giving her a right to it should therefore be enforced notwithstanding any failure to establish completeness of a gift of the bond to her, and that extrinsic evidence should not have been considered or given the effect of rendering the agreement with the trustee unenforceable; (4) that the issues raised on cross-appeal are not barred by estoppel and/or laches; (5) that recovery of attorney fees for protecting the integrity of marital and residuary trust assets should be allowed from the trustee individually or, alternatively, from the trust; and (6) that the trustee should be held accountable for profits and interest arising since the transfer of trust assets. Both parties assert that certain issues and arguments of the other were not properly presented to trial court and thereby waived.

Our review is de novo. Iowa R.App.P. 4.

### I. Issue on Appeal: Standing

The bank has asserted on appeal that Mary Ann does not have standing to challenge the action taken in regard to the marital trust. It says Mary Ann may not be affected by a determination of the court regarding the marital trust since her mother may exercise her power of appointment in favor of another person.

■ Mary Ann says the bank has failed to preserve error on the issue, claiming that the bank is raising the issue for the first time. We note, however, that the bank brought up the issue of whether Mary Ann was damaged in its trial brief

and that Mary Ann discussed the issue at length under the issue heading "Mary Ann Morrow has standing to contest any and all actions of MNB as trustee of the marital and residual trusts." The trial court recognized the bank alleged Mary Ann had shown no loss, and therefore no liability, but determined damages had been shown. We find the issue was raised and preserved for appeal.

When a question is presented to a court by an individual having no standing to raise the issue, the court is deprived of jurisdiction over the question. *Dumbaugh v. Cascade Manufacturing Co.*, 264 N.W.2d 763, 765 (Iowa 1978). Further, "A person or entity who has no interest in the estate is not entitled to object or except to the account of the personal representative," 34 C.J.S. Executors and Administrators § 884 (1942).

Some statutes provide for standing to sue on the part of persons with contingent interests, and jurisdictions vary on what type of contingent interests present a sufficient interest to allow an action to be brought. *Id.* Remaindermen have been frequently found to have a sufficient interest, where their interest will vest upon the death of the cestui que vie. *Id.* at § 884(b). When the interest of the remainderman will vest only upon the discretionary exercise of a general power of appointment by the owner of the life estate, a more difficult question is presented.

In one jurisdiction, the court found that such an interest was sufficient to confer standing upon the beneficiary, and the counsel for Mary Ann urges us to follow that court's reasoning as reflected in *Pinzino v. Vogel*, 98 Ill.App.3d 330, 53 Ill.Dec. 736, 424 N.E.2d 371 (1981). The court based its reasoning on three points: (1) it noted that courts within its jurisdiction had recognized that contingent remainders of a life estate, conditioned on survival, present an interest sufficient to challenge accountings regarding the life estate; (2) it rejected the widely held belief that those who own a life trust with a general power of appointment own a fee in the interest; and

(3) noted the language of the trust instrument showed an intent to preserve the trust. *Id.* at 334–35, 53 Ill.Dec. at 739, 424 N.E.2d at 374.

Mary Ann argues that the first point of the Illinois court's reasoning should also apply here, pointing out the Iowa court has been liberal in recognizing standing in *Moser v. Brown*, 249 N.W.2d 612 (Iowa 1977). There, the court found the plaintiff was an "interested party" under the statute providing that notice must be given to interested parties before an estate may be closed. *Id.* at 615. The plaintiff had been involved in an accident with the deceased and had not been given notice that claims should be filed against the estate. *Id.* at 614. Mary Ann says this shows a permissive attitude on the part of the Iowa courts in defining an "interested party."

However, we find that many of the cases defining "interested party" under the various provisions of Chapter 633 of the Code take a more restrictive view of the definition. It has been stated that an interested person who may contest a will includes only those with an immediate interest, not a contingent interest which may never vest. *Matter of Pearson's Estate*, 319 N.W.2d 248 (Iowa 1982). In *Pearson*, the court found that the testator's daughter-in-law was not an interested party when she claimed she could benefit because she was obtaining a divorce from the testator's son, and could receive larger property and support payments if the son received an interest under the will. *Id.* at 249. In another case, the court found a mother did not have standing to bring an action on behalf of her daughter who could receive an interest from a will, rejecting the argument that the mother could inherit from her daughter if she died and therefore also had an interest. *In re Will of Fallon*, 107 Iowa 120, 122, 77 N.W. 575, 575–76 (1898). (cited with approval in *Pearson* at 249). In other cases reviewed in *Pearson*, the court has held that an assignor of a prospective beneficiary did not have standing since there was no interest until the beneficiary inherited the interest. *Burk v. Morain*, 223

Iowa 399, 401–04, 272 N.W. 441, 442–44 (1937).

We believe these cases show that in Iowa we must take a close look at whether a person is an interested party, and that if the interest is too contingent that person has no standing. In determining what is the type of interest so contingent that it crosses the line and does not provide standing, we find, as the court did in *Pinzino*, that the intent of the testator is important. The court in *Pinzino* found significant the fact that the only language in the trust instrument which permitted invasion of the corpus stated that assets could not be dissipated for any purpose other than the "care, support and medical expenses" of the testator's wife. *Pinzino* 98 Ill.App.3d at 335, 53 Ill.Dec. at 739, 424 N.E.2d at 374. The court stated, "Such language reinforces the concept of preservation implicit in the creation of a trust arrangement." *Id.*

In this case we have a different situation. The language of the trust is much broader. The marital trust provided for distribution of income and principal as the trustee in its "sole discretion" determined was necessary. The trustee was able "in its sole discretion" to consider also other assets available to the wife and "any other relevant circumstances." Further, the wife is not required to account to anyone for any sums received, and disbursal of sums to the wife works as a discharge of the trustee for the amounts received. Mary Ann says that the marital trust contains a spendthrift provision, and this shows the trust cannot be terminated. The bank claims, however, that the so-called spendthrift provision is not located with the body of the marital trust, but that the spendthrift provision for the residuary trust is located in the body of that agreement. Since Edwin was a lawyer, and included the provision in the body of the residuary clause, the bank says this shows he did not intend the marital trust to be put under the restrictions placed on the residuary trust. This factor, along with the liberal language of the marital trust, shows an intent on the part of Edwin to obtain a marital deduction by creating the trust, but provide his wife with considerable control over the trust interest. We agree to the extent that it appears to have been the intent of the trustor not to create the type of restrictions that were placed on the trust in the *Pinzino* case.

In the third factor affecting the court in *Pinzino*, it decided to reject a long line of authorities who have indicated that when a life estate and general power of appointment are owned by the same person, that individual owns a fee in the interest. *In Perkin's Trust Estate*, 314 Pa. 49, 170 A. 255 (1934); Restatement (Second) of Trusts, § 216 comment h (1959); Scott on Trusts § 216.3 (3d Ed.1967). The court reasoned that when the general power is to be exercised by will alone, it shows an intent that the assets be preserved, since otherwise it would be more natural for the testator to have made an outright gift. *Pinzino* 98 Ill.App.3d at 334, 53 Ill.Dec. at 739, 424 N.E.2d at 374. However, it would not be more natural for the testator to make an outright gift of the assets if he desired to obtain the benefits of a marital deduction. We are also not certain that authorities in this area should be rejected simply because the power is to be exercised by will only. We do not hold today that the life estate combined with the power constitutes a fee, but we find that *Pinzino* is not persuasive authority in our question today for these reasons.

We are convinced that Mary Ann has not shown a sufficient interest to have standing to challenge the termination of the marital trust. Even if the court were to grant the relief she requests, and return the assets to the marital trust, Mary Ann still may not benefit. She will only benefit if her mother decides to exercise her general power of appointment in Mary Ann's favor, or does not exercise the power at all, speculative possibilities at best. We hold Mary Ann does not have standing to challenge the termination of the marital trust.

As a result of our decision, the court was without jurisdiction to resolve the issue of termination of the marital trust brought by

Mary Ann, and that decision is vacated, including the decision regarding Merchant's fees. Therefore we do not address the issues raised by Mary Ann or Merchants on the court's action in this regard.

The issues raised by Mary Ann in her cross-appeal regarding the residuary trust involve questions in which Mary Ann clearly does have standing. As a beneficiary of the residuary trust, she will directly benefit or be harmed by action affecting that trust.

## II. Cross-Appeal Issues

### 1. Allocation of Assets

Mary Ann claims the court erred in finding the actions of the trustee were not improper in allocating assets between the marital and residuary trust. She attacks in particular the valuation of the "Pekin Farm" included in the trusts assets. She says the bank did not comply with item "IIB" of the trust which required fifty percent of the assets be set aside to the marital trust, using the value of the adjusted gross estate as "finally determined for Federal Estate Tax purposes." The assets for funding the transfer were also to have an aggregate fair market value fairly representative of the appreciation or depreciation in value to the date of distribution of the assets. Mary Ann says the allocation to the marital trust occurred in August 1973, before the final value of the estate for tax purpose was determined in November 1974. The fair market value used was the value established by the executors for the federal estate tax return, rather than using a separate formal appraisal. She says this results in failure to consider the increase in value of the Pekin farm, which was valued for probate purposes at $200,000, but which she said was finally valued at $226,000. As a result, Mary Ann says, the marital trust is overfunded to the detriment of the residuary trust.

We first dispose of Mary Ann's claim that the burden of proof was improperly allocated to her. She says she did not bring the original action, and that Merchants as the moving party should have the burden. Further, she says the case of *In re Moe's Estate*, 213 Iowa 95, 237 N.W. 228

(1931), is controlling, indicating that the burden is on the fiduciary to show the correctness of contested items.

As the court held, and the bank points out, our courts have held that the burden is on the trustee to sustain the final report and the burden is on the objector to sustain allegations of impropriety. *In re Carson's Will*, 227 Iowa 941, 289 N.W. 30 (1939); Kurtz, *Kurtz on Iowa Estates* § 15.13 (1981). This is in conformity with *In re Moe's Estate*, which indicated the trustee has the burden to show the final report is free of error. As indicated in *Carson's Will*, objections must be proved by the objector.

■ We agree with the trial court that Mary Ann has not sustained her burden. Absent arbitrary or capricious action on the part of the trustee, this court will not interfere. *Johnson v. Johnson*, 242 Iowa 27, 29, 45 N.W.2d 573, 574 (1951). The trust agreement indicates, "The assets so set aside (to the marital trust) shall have an *aggregate* fair market value fairly representative of the appreciation or depreciation ... in the value to the date of distribution." (emphasis added). As the bank points out, there was nothing in the language of the instrument that would mandate the farm itself be put in at fair market value, and instead the aggregate assets were required to have a value fairly representative of the increase or decrease in value of all assets available for distribution. This is in compliance with Revenue Procedure 64–19 which indicates when assets have an aggregate fair market value on the date of distribution not less than the amount of the pecuniary bequest, as finally determined for estate tax purposes, it qualifies for the marital deduction. Stephens, Maxfield and Lind, *Federal Estate and Gift Taxation*, § 5.06(7)(b) (1983). As a result, the fiduciary's actions were within its proper discretion.

### 2. Payment of Costs

■ Mary Ann also failed to sustain her burden to prove that estate costs were improperly paid from the residuary trust.

As she points out, the trust and will are silent as to the source of the payment of costs. She says this shows that the costs should have been paid from liquid assets available before looking to the trust funds. However, an amendment to the trust explicitly states that taxes are to be paid from the residuary trust and not from the marital trust. The court found payment of the costs from the residuary estate was within the fiduciary's discretion and we agree. We will interfere in such actions only where there is evidence the action was unreasonable or resulted from improper motives. *In re Manahan's Estate*, 255 Iowa 1060, 1066, 125 N.W.2d 135–38 (1963); *In re Tone's Estate*, 240 Iowa 1315, 1321–22, 39 N.W.2d 401, 405 (1949).

### 3. Ownership of the Bond

Mary Ann also disputes the court's finding that the $10,000 bond was an incompleted gift. The cases regarding the elements of a gift all require that actual or constructive delivery of the gift occur before the gift is complete. *Ratterman v. Lodge*, 13 F.2d 805, 806 (8th Cir.1926); *Woodward v. U.S.*, 106 F.Supp. 14, 27–28 (N.D.Iowa) *aff'd* 208 F.2d 893 (8th Cir. 1952); *Peters v. Fort Madison Construction Co.*, 72 Iowa 405, 409–10, 34 N.W. 190, 192–93 (1887). The trial court noted the *Peters* case involved a similar situation, and the court held delivery was not complete. We agree.

For the first time on appeal Mary Ann also raises the question of whether her father was holding the bond in trust for her. This issue was not raised in the pleadings or elsewhere prior to the court's ruling. The first mention of the issue is made in the appellee's motion pursuant to rule 179(b). As was stated in *Oxborne v. Iowa Natural Resources Council*, 336 N.W.2d 745, 747 (Iowa 1983), "The ... issue was not presented to the district court except in a motion to enlarge and amend findings. This matter should be raised as an issue in some manner prior to a final ruling by the district court." We do not address this issue on appeal.

### 4. Fees

Finally, Mary Ann says she should have been awarded attorneys fees for protecting the integrity of the residuary trust. As she points out, she was successful in preventing family members from being appointed as successive trustees to this trust. However, the court ruled on this question May 28, 1981. No motion or appeal has followed from that action for three years. This proceeding is the improper time to raise the question; it should have been presented to the district court through a motion, or appeal taken thirty days after the ruling.

We note parenthetically that Mary Ann also presents as an issue in her cross-appeal the question of whether attorneys fees for protecting the marital trust may be recovered from the trustee personally. Since we have ruled that Mary Ann does not have standing regarding this question, the court's ruling awarding attorneys fees also have been vacated.

AFFIRMED IN PART, REVERSED IN PART.