Eugene BRONNER, Appellant,

v.

EXCHANGE STATE BANK and Lyle J. Thompkins, Appellees.

No. 89–449.

Court of Appeals of Iowa.

Feb. 22, 1990.

David P. McManus of Olinger & McManus, Cedar Rapids, for appellant.

Ronald J. Pepples, Parkersburg, for appellees.

Heard by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Appellant Eugene Bronner appeals the district court's granting of summary judgment to appellees. We affirm.

Appellant was a customer of appellee Exchange State Bank (the bank). Appellant alleges that at some time in December 1982, the bank wrongfully used the proceeds of a Commodity Credit Corporation loan to pay a debt appellant owed the bank in spite of assurances from the bank that the proceeds would be used to pay appellant's mortgage and other debts. Appellant claims that as a result of appellees' misapplication of these funds he was forced to take bankruptcy. Appellant acknowledges his claims against appellees arose in December of 1982.[1]

On April 7, 1983, appellant filed a petition for bankruptcy under Chapter 11. Appellant listed a portion of his alleged claim against the bank on his bankruptcy schedule of personal property. On March 19, 1987, appellant filed a Chapter 7 bankruptcy petition. Appellant, however, did not list his alleged claim against the appellees on his schedule of personal property. Appellant was discharged from his debts on July 2, 1987.

On October 28, 1987, appellant filed this action against appellees, and appellees answered on November 6, 1987. On January 8, 1988, without ever having amended his Chapter 7 schedule, appellant had the

---

1. This date is important in two respects: (1) any claim the appellant may have existed prior to his bankruptcy and (2) it has relevance insofar as the five-year statute of limitation is concerned.

Chapter 7 bankruptcy trustee file an ex parte notice of abandonment of appellant's alleged cause of action against the appellees.

The appellees subsequently filed a motion for summary judgment in which it argued that appellant lacked standing to bring this action since appellant's claim had not been abandoned by the bankruptcy trustee at the time of its filing. The appellees also argued that appellant's failure to list his claim on his Chapter 7 bankruptcy schedule caused appellant to be estopped from asserting it in this action. The district court granted appellees' motion based on the latter theory. While we affirm the decision of the trial court, we do so on the former theory.

Our review is on assigned errors. Iowa R.App.P. 4. In determining whether summary judgment is appropriate, we apply the following standards:

> Summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to the judgment as a matter of law. The burden of showing the nonexistence of a material fact is upon the moving party. While an adverse party generally cannot rest upon his pleadings when the moving party has supported his motion, summary judgment is still not proper if reasonable minds could draw different inferences and conclusions from the undisputed facts. In this respect, summary judgment is functionally akin to a directed verdict; every legitimate inference that reasonably can be deduced from the evidence should be afforded the nonmoving party, and a fact question is generated if reasonable minds can differ on how the issue should be resolved.

*Martinko v. H–N–W Associates*, 393 N.W.2d 320, 321 (Iowa 1986) (quoting *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984)).

■ We believe this dispute can be resolved on the jurisdictional question of whether appellant had standing to initiate this action. It is clear that a party must have capacity to sue before it may commence and maintain an action, *see Dumbaugh v. Cascade Mfg. Co.*, 264 N.W.2d 763, 765 (Iowa 1978), and that the court is deprived of jurisdiction if the party fails to have standing, *see In re Willcockson*, 368 N.W.2d 198, 202 (Iowa App.1985).

■ Upon appellant's filing of his bankruptcy petition, all of his property became property of the estate created pursuant to 11 U.S.C. § 541(a). *See Folz v. BancOhio Nat. Bank*, 88 B.R. 149, 150 (S.D. Ohio 1987); *see generally* 4 *Collier on Bankruptcy* § 554.10, at 541–65 (15th ed.1979). Causes of action, including rights of action arising from contracts, constitute property rights which are vested in the bankruptcy trustee such that only the trustee has standing to bring claims on debtor's causes of action. As a result, the debtor cannot sue on the cause of action unless abandoned. *See Folz*, 88 B.R. at 150; *Transload & Transport v. American Marine Underwriters*, 94 B.R. 416, 418–19 (E.D.La. 1988).

Digressing for a moment, when the appellant brought this action, his Chapter 7 bankruptcy matter was yet pending. According to the bankruptcy file, he made no claim against the appellees. To compound the problem, he certified to the bankruptcy court, under the penalty of perjury, that his schedules were true and correct. He went so far as to designate a zero value to that part of schedule B–2(q) [2] that concerns "contingent or liquidated claims of every nature, including counterclaims of debtor."

There the matter rested until October of 1987, when he initiated this suit. The schedules had not been amended to show this claim; nor was there at that time an abandonment of the claim by the trustee in bankruptcy.

■ It is without dispute that at the time appellant brought this action any claim he had against the appellees was still an asset of his bankruptcy estate. This is settled law. It is equally settled that at that time appellant was without standing to sue on his claim. *See Folz*, 88 B.R. at 150.

---

**2.** This is the schedule where ordinarily the claim now made by the appellant would be listed.

The appellant did, subsequent to filing this suit, obtain an abandonment order of his claim against the appellees from the trustee in bankruptcy. He now argues that he has standing for although the abandonment order was obtained after suit was commenced, it was secured prior to trial. The record reveals that the abandonment order was finalized on January 7, 1988.[3]

We do not necessarily disagree with appellant's position that the supreme court case of *Dumbaugh v. Cascade Mfg. Co.,* 264 N.W.2d 763, 765 (Iowa 1978), does not control the outcome of this case. The factual setting of *Dumbaugh* and this case are sufficiently dissimilar so as to render it of little help to either party. This is so for in *Dumbaugh* the plaintiff, the trustee in bankruptcy, had the capacity to sue when the suit was commenced. He lost the capacity during the prosecution of the case for during its pendency he was discharged as trustee and the bankruptcy estate was closed. The supreme court, in reversing the trial judge, held that the case should have been dismissed for there was no plaintiff in esse. However, the plaintiff in *Dumbaugh* took no action to improve his position prior to trial as did the appellant here.

We do, however, believe that *Pearson v. Anthony,* 218 Iowa 697, 254 N.W. 10 (1934), serves as a guide to this case. In *Pearson,* a surviving spouse brought an action for the wrongful death of her husband arising out of an automobile accident. When she brought her action, she alleged she was the administratrix of her husband's estate, even though no estate had been opened at that time. After the statute of limitations expired, she was appointed administratrix and the probate court entered an order, pursuant to her application, "ratifying" her actions in bringing the suit, even though she was not then an administratrix.

In *Pearson,* the defendant argued the surviving spouse lacked capacity to sue, but the trial court refused to dismiss. However, on appeal, the supreme court reversed, holding that because the surviving spouse did not have the capacity to sue in the first instance (the cause of action at that time belonged to the decedent's estate), she could not thereafter obtain standing by opening an estate and having herself so appointed. The result in *Pearson* is consistent with the results reached by the supreme court in *Gardner v. Beck,* 195 Iowa 62, 72, 189 N.W. 962, 966 (1922).

Thus, in the case at bar, we hold that since the appellant was without standing to bring the action in the first instance, the abandonment order does not relate back so as to give appellant standing for there is nothing to relate back to. The appellant from the inception did not have capacity to sue. We also conclude that *Troester v. Sisters of Mercy Health Corp.,* 328 N.W.2d 308, 313 (Iowa 1982), is of no help for in that case the plaintiff had capacity to sue at the time action was commenced.

The district court was correct in sustaining appellees' motion for summary judgment. Although we have not discussed the theory of judicial estoppel, this should not be interpreted as a rejection of this theory. Because we find the summary judgment motion should be sustained on the grounds of lack of standing, we need not consider the judicial estoppel theory nor need we address the remaining issues raised by the parties.

AFFIRMED.

SCHLEGEL, P.J., concurs.

SACKETT, J., specially concurs.

SACKETT, Judge (specially concurring).

I agree with the result reached by the majority on the basis asserted by the trial court.

---

**3.** The appellees challenge the validity of the ex parte order of abandonment and the appellant defends his position in his brief. However, we are not convinced that we have jurisdiction to pass on the validity of that order for it is a matter that arises in the federal bankruptcy court. In either event, its resolution is not necessary to this opinion.