In the Matter of the Estate of Mary U. Trainer,
a/k/a Mary Uihlein Trainer, Deceased:

Wisconsin Department of Revenue, Appellant,

v.

Robert B. Trainer, Personal Representative, and Stevens U. Trainer, Willis J. Stauffacher and Rudolph T. Hoppe, Co-Trustees, Respondents.†

Court of Appeals

*No. 84–825. Submitted on briefs December 10, 1984.—
Decided February 1, 1985.*
(Also reported in 365 N.W.2d 893.)

---

† Petition to review denied.

For the appellant the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Roxanne C. Brown,* assistant attorney general, of counsel, of Madison.

For the respondents Trustees of the Mary U. Trainer Trust No. 4 the cause was submitted on the briefs of *Foley & Lardner,* with *Harrold J. McComas* and *Stephen M. Fisher* of counsel, of Milwaukee.

For the respondent Robert B. Trainer the cause was submitted on the brief of *Francis H. Parson* of Milwaukee.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

WEDEMEYER, P.J.   The Wisconsin Department of Revenue (state) appeals from a judgment holding that a portion of sec. 72.01(5), Stats. (1969), was unconstitutional and that a power of appointment possessed by Mary Uihlein Trainer therefore was not includable in her taxable estate.  Because the application of the statute to the facts presented would violate the estate's right to equal protection under the law, we affirm.

The facts are not in dispute.  Robert A. Uihlein executed a trust agreement on December 31, 1943, wherein

he granted to Trainer, his daughter, a power of appointment over certain trust assets. The provisions of the trust agreement pertinent to the resolution of this appeal read:

(b) (1) All, or any part less than all, of that portion of the trust fund contributed to the trustees by Robert A. Uihlein, donor, or allocable to contributions to the trustees by Robert A. Uihlein, donor, shall be distributed and paid to such person or persons who are included within a class which does not include any others than:

a. The spouse of Robert A. Uihlein, donor;
b. The spouse of Mary Uihlein Trainer;
c. The spouse of Robert A. Uihlein, Jr.;
d. Descendants of Mary Uihlein Trainer or her spouse;
e. The descendants (other than Mary Uihlein Trainer) or Robert A. Uihlein, donor, and the spouses of such descendants;

as Mary Uihlein Trainer shall appoint to receive the same by her last will and testament, or by an instrument in writing executed by her during her lifetime before two witnesses and acknowledged before a notary public. In exercising such power of appointment, Mary Uihlein Trainer shall specify the part of such portion of the trust fund to be distributed and paid to such person or to each of such persons. As used herein, the term "descendants" includes adopted children.

(2) Such part of the portion of the trust fund contributed to the trustees by Robert A. Uihlein, donor, or allocable to contributions to the trustees by Robert A. Uihlein, donor, which shall not be paid and distributed to any such person or persons within such class pursuant to the exercise of the power of appointment herein granted to Mary Uihlein Trainer shall be added to and form a part of the balance of the trust fund to be divided and allocated as provided in Paragraph (c) of this Article II.

Trainer did not exercise this power of appointment either by will or by any other written instrument executed during her lifetime. Nor did she ever release or modify the power. Trainer died July 21, 1971.

The state seeks to apply sec. 72.01 (5), Stats. (1969),[1] to the power of appointment which Trainer held at the time of her death. The particular portion of the statute that is central to this appeal was added to sec. 72.01 (5) by ch. 510, Laws of 1951, effective July 22, 1951. It defines the powers of appointment that will be tax exempt and specifies that if a power of appointment was created before October 21, 1942 which did not fall within the definition of the tax exempt class, the power could be tailored by modification or release to qualify as tax exempt. No provision, however, was made for modifi-

[1] Section 72.01 (5), Stats. (1969), provided:

(5) Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property, made either before or after April 1, 1903, such appointment, when made, shall be deemed a transfer taxable under ss. 72.01 to 72.24 in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power, and had been bequeathed or devised by such donee by will; and whenever any person or corporation possessing such a power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under ss. 72.01 to 72.24 shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure. *For the purpose of this section, the term "power of appointment" means any power to appoint exercisable by any person either alone or in conjunction with any other person, except a power to appoint within a class which excludes the donee of the power and is restricted to the husband, wife, lineal issue, the wife or widow of a son and the husband of a daughter of the creator of the power; provided, that such power was created on or after October 21, 1942, or if created prior to October 21, 1942, was subsequently modified or limited by release or otherwise to the type of restricted power described herein;* . . . .

The material added by ch. 510, Laws of 1951, is emphasized.

cation of any powers created on or after October 21, 1942 and before July 22, 1951. The power of appointment with which we are concerned was created by Robert A. Uihlein in the December 31, 1943 trust agreement.

The trial court concluded that Trainer's power of appointment was not subject to inheritance tax for two reasons: (1) Section 72.01(5), Stats. (1969), as applied to Trainer's estate, would deny the estate equal protection of the law; and (2) at the time of her death, Trainer could not exercise the power of appointment in favor of any person outside of the exempt class defined in sec. 72.01(5). We rely on the trial court's first reason as the basis for this affirmance.

The state contends that there is no constitutional infirmity in the statutory classification created by ch. 510, Laws of 1951, *i.e.,* the distinction drawn between powers of appointment created before and after 1942. It argues that the legislature was attempting to make Wisconsin's taxation of powers of appointment mirror the federal scheme and that the classes established have a fair and substantial relationship to the object of the legislation. The October 21, 1942 cutoff date in ch. 510 and the ability to release or modify powers of appointment, which is limited in ch. 510 to powers created before October 21, 1942, both tie in directly with the federal law. The state argues that the classifications of ch. 510 therefore are not arbitrary. We are not persuaded and conclude that the legislature's effort died aborning.

In general terms, a power of appointment is the authority to designate a beneficial interest in property. Usually, powers of appointment are considered either general or special. Under a general power, the class of permissible donees or appointees is unrestricted; under a special power, a limitation is placed on who may be the object of the appointment.

The Revenue Act of 1916, which imposed the first federal estate tax, made no provision for the special

treatment of property passing by a power of appointment. *See* Revenue Act of 1916, Pub. L. No. 271, 39 Stat. 756 (1916). The United States Supreme Court rejected an effort by the Treasury to equate a general power of appointment with a provision dealing with property held by a decedent. *United States v. Field,* 255 U.S. 257, 264 (1921). As a result, powers of appointment continued to pass free of estate tax under the 1916 Act.

To fill this statutory gap, Congress amended the estate tax law so that a gross estate was defined to include property passing under a general power of appointment exercised by the decedent by will. Revenue Act of 1918, Pub. L. No. 254, 40 Stat. 1057, 1097 (1919). If, however, the holder of the power could not appoint to himself or his creditors, the power was considered to be special and was exempt from estate taxation.

In response to a joint congressional report which found this statute inadequate in scope and an attractive device for tax avoidance, Congress enacted sec. 403 of the Revenue Act of 1942, Pub. L. No. 753, 56 Stat. 798, 942 (1942). Under the new provision, the exemption of special powers was reduced in scope and applied only if its exercise was limited to members of a specifically described group. Section 403 of the Act provided that a special power would be tax exempt if the class of possible appointees included only "the spouse of the decedent, spouse of the creator of the power, descendants of the decedent or his spouse, descendants (other than the decedent) of the creator of the power or his spouse, spouses of such descendants" and certain charities. The 1942 amendment applied generally to estates of decedents dying after October 21, 1942, the effective date of the Act. For powers existing prior to October 21, 1942, various transitional rules were provided. For all subsequently created powers, the stricter rules became effective immediately.

No sooner had the 1942 amendment been enacted, than complaints were voiced concerning its rigidity in application and resulting impracticality. *See* Craven, *Powers of Appointment Act of 1951,* 65 Harv. L. Rev. 55, 61 (1951–52). After years of analysis and exchange of views by the various interested groups, Congress returned to its pre-1942 position by enacting the Powers of Appointment Act of 1951, Pub. L. No. 58, 65 Stats. 91, effective June 28, 1951. It liberated powers of appointment from the estate tax, except for general powers as defined by I.R.C. sec. 2041(b)(1). As a consequence, the only powers subject to tax were powers exercisable in favor of the decedent, the decedent's estate, the decedent's creditors, or creditors of the decedent's estate. 5 B. Bittker, *Federal Taxation of Income, Estates and Gifts* sec. 128.1, at 128–7, 128–8 (1984).

Wisconsin's inheritance tax on property subject to a power of appointment has far deeper roots. By sec. 1 (5), ch. 44, Laws of 1903, the legislature adopted verbatim sec. 220(5), ch. 284, of the Laws of New York of 1897. New York courts interpreted this provision to include both general and special powers of appointment; their interpretation was acceded to by Wisconsin courts. The provision taxed all powers of appointment and remained intact until 1951, when ch. 510, Laws of 1951, narrowed its scope of application by creating a tax exemption. *See* note 1, *supra.*

The federal Revenue Act of 1942, sec. 403, effective October 21, 1942, defined a nontaxable power of appointment as "a power to appoint within a class which does not include any other than the spouse of the decedent, spouse of the creator of the power, descendants of the decedent or his spouse, descendants (other than the decedent) of the creator of the power or his spouse, spouses of descendants" and certain charities. By the Powers of Appointment Act of 1951, effective June 28,

1951, Congress supplanted an elaborately defined class of permissible appointees with a simple definition of a taxable power of appointment.

If Wisconsin, by enacting ch. 510, Laws of 1951, was attempting to federalize its taxation of powers of appointment, as argued by the state, it was chasing a mirage rather than mirroring a federal counterpart. Chapter 510 was not enacted until after Congress drastically changed the image to be copied. Additionally, the definition of a nontaxable power of appointment contained in ch. 510 is considerably narrower than that contained in the 1942 federal act. The possibility therefore remained, even after the enactment of ch. 510, that a power of appointment designed to be nontaxable under the federal law would still be taxable under Wisconsin law. It was not until 1978, when sec. 517e, ch. 418, Laws of 1977, was enacted, that Wisconsin finally adopted the federal definition of a taxable power and thereby achieved the uniformity the state claims it desired.

From an historical perspective, we find little if any basis for the state's contention that the pre-October 21, 1942 versus post-October 21, 1942 classification created by ch. 510 had a substantial relationship to the object of the legislation. It may be true, although it is not established in the record, that the legislature intended to use the effective date of sec. 403 of the Revenue Act of 1942, October 21, 1942, to effectuate a reasonable congruence between state and federal law. Nevertheless, ch. 510 was so tardily enacted and so far removed from the federal legislation in effect when it was passed that uniformity was no longer achievable.

Further, while Congress left no transitional gaps ripe for constitutional challenge, the drafters of ch. 510 created a legislative vacuum for powers created between October 20, 1942 and July 22, 1951. Powers created

after July 22, 1951, could, of course, be created as nontaxable by being drafted in compliance with the newly-enacted statute. Under ch. 510, powers created before October 21, 1942, that did not comply with the definition for tax exemption could be made nontaxable by being modified or limited to comply with the definition. On the other hand, powers created on or after October 21, 1942, and before July 22, 1951, were given no opportunity to be made nontaxable.

Aside from the state's abortive and belated effort to associate Wisconsin's qualification date to that of the federal act, October 21, 1942, has no relationship whatsoever to prior Wisconsin law. We perceive no reason why October 21, 1942, was picked as the date at which the opportunity to modify noncomplying powers would be cut off. Because of the statutorily-created hiatus, Trainer was not provided the same protection or opportunity possessed by donees of powers which were created before October 21, 1942.

In *Will of LeFeber*, 223 Wis. 393, 271 N.W. 95 (1937), the supreme court declared an emergency inheritance tax law unconstitutional because certain time periods were omitted from its application. It stated: " '[C]lassification, in order to be legal, must be rational; it must be founded upon real differences of situation or condition, which bear a just and proper relation to the attempted classification, and reasonably justify a difference of rule.' " *Id.* at 398, 271 N.W. at 97 (quoting *Black v. State*, 113 Wis. 205, 221, 89 N.W. 522, 528 (1902)). The court further stated: " '[C]lassification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' " *Id.* at 399, 271 N.W. at 97 (quoting Colgate v. Harvey, 296 U.S. 404, 423 (1935)).

"As applied to the inheritance tax, there may be proper classification, and the required uniformity 'means simply taxation which acts alike on all persons similarly situated.'" *Estate of Heuel,* 4 Wis. 2d 400, 404, 90 N.W.2d 634, 637 (1958) (citation omitted).

If the classification does not rest upon a difference between the classes which bears a fair, substantial, natural, reasonable and just relation to the objective of the act, it is a violation of the guaranty set forth in the fourteenth amendment of the United States Constitution that all citizens are entitled to equal protection of the law.

*Harris v. Kelley,* 70 Wis. 2d 242, 251, 234 N.W.2d 628, 632 (1975).

The only support for the classification proposed by the state is identification with the effective date of the federal Revenue Act of 1942, which contained a different definition of tax exempt powers and which, unlike ch. 510, augmented its objective with a continuum of transitional rules. This does not, in our opinion, constitute a sufficient basis for classification. Chapter 510 did not have the same impact on all persons similarly situated and therefore violated Trainer's and her estate's right to equal protection.

The state next argues that if ch. 510 is found to be unconstitutional, the statute it amended, sec. 72.01(5), Stats. (1949), would apply to the power, and the power therefore would be taxable. The state's argument is without merit. The trial court concluded:

Chapter 510, Laws of 1951, is arbitrary and discriminatory, and therefore *unconstitutional, insofar as it denied to Mary U. Trainer or her Estate the right to release or modify a power of appointment created after October 21, 1942, and before July 21, 1951,* while giving to others the right to release or modify a power of appointment created before October 21, 1942, and that being uncon-

stitutional, *it cannot be applied by the Department . . .* to tax such power . . . . [Emphasis added.]

The record reveals no attack on the prospective creation of classes of appointees exempt from taxation. It is only the retroactive application of the statute to powers created during the hiatal period that is the point of contention.

Section 990.001(11), Stats., provides in part: "If any provision of the statutes . . . is invalid, or if the *application . . . to any* person or *circumstance* is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application." (Emphasis added.)

In *State ex rel. Briggs & Stratton Corp. v. Noll,* 100 Wis. 2d 650, 659, 302 N.W.2d 487, 492 (1981) (quoting *Bence v. City of Milwaukee,* 84 Wis. 2d 224, 233–34, 267 N.W.2d 25, 30 (1978)), the supreme court declared:

"There is ample precedent to permit a court to sever from [a] . . . legislative enactment that portion of an act which is unconstitutional and to declare that the remaining portion is valid. . . . [T]he determination of whether an invalid portion so infects the remainder of the legislation as to require the entire law to be invalidated is a question of legislative intent."

The inquiry is whether the "elimination of a void portion leaves a complete law in some reasonable aspect capable of being carried into effect consistent with the intention of the legislature which enacted it in connection with the void part . . . ." *Estate of Zeimet,* 259 Wis. 619, 623–24, 49 N.W.2d 924, 928 (1951).

By ch. 510, the legislature created some tax exempt classes of appointees. The reason behind the creation of each tax exempt class is not as important as the fact that the legislature did create them. It is obvious that

the legislature intended to create them. That intent would be furthered if the prospective features of the statute were left to stand alone. We perceive no good reason to use a broadax when a scalpel is more suitable. Thus we conclude that the *inability* to utilize the procedural exception for modification to a tax exempt class is all that is invalid. The substantive portion of ch. 510 creating the tax exempt class remains in force as a viable part of sec. 72.01(5).

*By the Court.*—Judgment affirmed.