2002 OK CIV APP 25

The ESTATE OF Ernest L. SIEBER, Protestant/Appellant,

v.

The OKLAHOMA TAX COMMISSION, Respondent/Appellee.

No. 95,500.

Court of Civil Appeals of Oklahoma, Division No. 4.

Oct. 23, 2001.

Certiorari Denied Jan. 23, 2002.

Kevin M. Coffey, Groom, Hammond & Harris, P.C., and Robert L. Barr, Oklahoma City, Oklahoma, for Appellant.

Tom Kemp, General Counsel, David L. Kinney, Assistant General Counsel, Oklahoma Tax Commission, Oklahoma City, Oklahoma, for Appellee.

KEITH RAPP, Judge:

¶ 1 The Estate of Ernest L. Sieber (Estate), Protestant before the Oklahoma Tax Commission, (OTC) appeals the OTC's Order Adopting Findings and Conclusions of its Administrative Law Judge (ALJ) which resulted in the inclusion of the value of the Ernest L. Sieber Trust (Trust) in the taxable estate of Ernest L. Sieber (Decedent) for Oklahoma estate tax purposes. The authority for this appeal is 68 O.S. Supp.2000, § 225.

## BACKGROUND

██ ¶ 2 The facts are straightforward. At first, the OTC audit staff added the Trust's value into the Estate on the ground that the Trust was revocable.[1] Estate protested and OTC receded from that position completely and stipulated that the Trust was irrevocable. The ALJ found and the OTC ordered that the Trust is irrevocable.

¶ 3 OTC's counsel asserted two propositions at the protest hearing as grounds for including the value of the Trust into the Estate for estate tax purposes. The ALJ and the OTC clearly ruled against the Estate on the first of the grounds and that ruling establishes the principle issue on appeal.

---

1. OTC originally included the Trust value in the Estate on the theory that the Trust was revocable. However, after protest, before the ALJ, and here, OTC's counsel stipulates that the Trust is irrevocable and now proceeds on the issues stated herein. The ALJ found the Trust to be irrevocable and OTC adopted that finding. Estate listed in its petition-in-error the question of whether OTC may change theories after a protest has been filed, but did not brief the issue. This Court deems the issue waived for failure to brief the issue. Okla. Sup.Ct. R. 1.11(k). Moreover, the issue's vitality has not been preserved as in *State ex rel. Jones v. Baggett*, 1999 OK 68, 990 P.2d 235 n. 5.

2. 68 O.S. Supp.2000, § 807(A)(9) provides that the value of the gross estate shall include:

¶ 4 The first question is whether the Trust contains a general power of appointment. If the Trust contains this general power, then it is included in the Estate for estate tax purposes pursuant to 68 O.S. Supp.2000, § 807(A)(9).[2] This issue arises from the language of the Trust, together with the undisputed fact that Decedent and his two children, Robert John Sieber and Carol Ann McCurley (Children), are all beneficiaries as to principal and income and they are also the co-trustees who act by a majority of the trustees. Paragraph 6 of the Trust provides:

> 6. The Trustor directs that the Trustees pay to the Trustor, or the heirs at law of the Trustor, during the life of this Trust such amounts from both the income and the principal of the trust estate that are *in the sole discretion of the Trustees necessary for the maintenance of health, comfort, and welfare of the Trustor, and the heirs at law of the Trustor.* (Emphasis added.)

¶ 5 The OTC Order and the ALJ Findings and Conclusions do not delineate which aspect of "general power of appointment" was deemed applicable. However, based upon the administrative record and the appeal documents and briefs, OTC apparently relied solely upon that part of the language of Section 807(A)(9) that refers to a general power of appointment "which is exercisable in favor of the decedent."[3]

¶ 6 The second ground advanced by OTC's counsel for inclusion of the value of the Trust for estate tax was that the Trustor (Decedent) was a contingent remainderman to the

---

(A)(9) To the extent of the value of any interest in property within the jurisdiction of this state, *over which the decedent at the time of the death of the decedent had possessed a 'general power of appointment.' A 'general power of appointment' as used herein is restricted to one that is exercisable in favor of the decedent, the estate of the decedent, creditors of the decedent, or creditors of the estate of the decedent.* (Emphasis added.)

3. These documents include OTC's "Division Memorandum Brief," Record page 14, OTC's Response to Petition in Error, and OTC's Brief here. Moreover, no evidence or Trust provision was offered to show that any other part of the "general power of appointment" definition would apply in this case.

Trust at the time of his death. The Estate Tax Code includes in the estate tax any property "in which the decedent had an interest ... whether vested or *contingent* ...." 68 O.S. Supp.2000, § 807(A)(1).

¶ 7 It is undisputed that Decedent was survived by his adult Children, his Children's seven children, also adults, and several great-grandchildren. The Trust provides in paragraph 8:

8. Upon termination of the Trust as provided above, the Trustee or Trustees shall distribute the corpus and accrued income of the Trust to the heirs at law of the Trustee as set out on Exhibit "A" which is attached hereto and made a part hereof; provided however, that the Trustee or Trustees may create other trusts for the benefit of the said heirs at law which trusts may receive any part of the proceeds herefrom.

Exhibit "A" of the Trust does not name anyone as an "heir at law" nor does it identify anyone by relationship to Decedent. The text of Exhibit "A" divides specific properties between Robert John Sieber and Carol Ann McCurley and further provides that all the rest and remainder of the property shall be divided in equal parts. The last paragraph then states:

Should either Robert John Sieber or Carol Ann McCurley, or both of them, die prior to the distribution set out herein, then and in that event, that property that would otherwise have become the property of that person shall be distributed to their heirs by right of representation.

¶ 8 OTC's counsel's position at the administrative hearing, and here, is that if those two individuals had died prior to distribution and if neither had left heirs, then no one would receive the Trust property. In that event, the Trust property would revert back to the Trustor and be distributed in probate, thereby constituting Trustor as a contingent remainderman, so the value of the Trust is included in his estate. Under this hypothetical, the fact that Decedent's Children, the named individuals in Exhibit "A", actually survived him is immaterial.

¶ 9 The ALJ made findings of fact on this issue, which the OTC adopted without change.[4] The ALJ found that Robert John Sieber and/or Carol Ann McCurley were vested remaindermen of the Trust, subject to being divested. The ALJ did not specify how they might be divested. The ALJ further found that if Robert John Sieber or Carol Ann McCurley died prior to distribution, then their heirs were contingent remaindermen of the Trust by right of representation, but made no finding regarding identity of those persons. Finally, the ALJ found that if both died prior to distribution and without heirs, then no one would receive the Trust property and the Estate would be a contingent beneficiary by operation of law.[5]

¶ 10 However, in the Conclusions of Law, also adopted by the OTC, the *only* basis assigned by the ALJ for including the value of the Trust in the Estate was the existence of a general power of appointment. No mention was made of the alternative, contingent remainder basis under Section 807(A)(1). The OTC Order made no changes. Nevertheless, here OTC submits the contingent remainder basis as a ground to include the value of the Trust in the Estate. Estate argues that this ground should not be utilized because the ALJ did not so rule and no appeal was taken from the absence of any such ruling to the OTC.

¶ 11 The OTC denied Estate's request for *Hearing in Banc* and adopted the ALJ's Findings, Conclusions, and Recommendations without modification. Estate appeals.

## STANDARD OF REVIEW

■ ¶ 12 In review pursuant to Section 225, this Court will affirm an OTC order if the record contains substantial evidence in

---

4. OTC Order and attached Findings, Conclusions, and Recommendations, paragraphs 6(g)-(i) under Facts. Record, pages 136, 138–39.

5. The record does not contain any probate decree or determination of heirs judgment establishing the heirs of Decedent. Decedent's marital status as a widower at the time of his death must be inferred from the tax returns and his Will of August 1993, stating that he is a widower. The absence of other children, natural, adopted, or deceased, must be inferred from the same documents. Likewise, the record does not show the marital status of Children nor whether they have Wills which would dispose of the property independently of intestacy.

support of the facts upon which the decision is based and the order is otherwise free of error. *El Paso Natural Gas Co. v. Oklahoma Tax Commission,* 1996 OK CIV APP 69, 929 P.2d 1002; *see Dugger v. Oklahoma Tax Commission,* 1992 OK 105, ¶ 1, 834 P.2d 964, 965.

■■■ ¶ 13 Where the facts are not disputed an appeal presents only a question of law. *Baptist Building Corp. v. Barnes,* 1994 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. The appellate court has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Investment Corp.,* 1996 OK 125, 932 P.2d 1100 n. 1. Matters involving legislative intent present questions of law which are examined independently and without deference to the trial court's ruling. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *Keizor v. Sand Springs Ry. Co.,* 1993 OK CIV APP 98, ¶ 5, 861 P.2d 326, 328. When reviewing tax statutes, just as with other statutes, this Court's goal is to ascertain legislative intent and effectuate that intent. *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210, 1212.

## ANALYSIS AND REVIEW

¶ 14 The estate tax does not tax property as such. The tax is levied upon the shifting of economic benefits and the privilege of transmitting and receiving such benefits. *In re Harkness' Estate, 1921 OK 329, 204 P. 911.* Thus, several categories of interests may find themselves subject to being treated as included in an estate for tax purposes.

### History Leading to ALJ's Consideration of Issues

¶ 15 At this juncture a review of the administrative proceedings will set the scene for the following analysis. OTC originally included the Trust in the Estate on the ground that the Trust was revocable. The Estate protested this decision by written pro-

test dated September 10, 1999. The Estate presented its position in writing, filed January 12, 2000, which addressed the revocable-irrevocable issue.

¶ 16 Then, OTC filed its Division's Memorandum Brief on January 12, 2000. In this document OTC *no longer asserted that the Trust was revocable.* There, and at the administrative hearing, OTC stipulated that the Trust was irrevocable. However, in the Memorandum Brief and thereafter, OTC took the position that Decedent possessed a general power of appointment and that Decedent had a contingent interest in the Trust property.

¶ 17 The matter came before the ALJ on January 19, 2000. At that time, the Estate argued the revocable issue, but OTC stipulated that the Trust was irrevocable. The Administrative Hearing Record contains a discussion in which counsel for the Estate spoke about a prehearing conference and a discussion then of the issues.[6] The appellate record does not contain a transcript of the prehearing conference or a prehearing conference order. In any event, Estate's counsel announced that he was proceeding on the basis of the issue set out by OTC in its adjustment sheet, which was the revocable trust issue. At one point the ALJ appeared to agree that whether the Trust was revocable was the issue for trial.[7]

¶ 18 The Estate did not address in any detail the issues presented by OTC's Division's Memorandum Brief of January 12, 2000. Moreover, the record does not show any request by the Estate to continue the hearing in light of OTC's presenting for consideration the new grounds contained in OTC's Division's Memorandum Brief. Likewise, the Estate did not object when the ALJ ruled that the Estate bore the burden of proof as protestant under the Tax Code Regulations, Oklahoma Administrative Code (OAC), 710:1–5–47. Thus, while it is possible to wonder about the propriety of considering the new OTC issues, the Estate has not raised the issue in this appeal.[8]

---

6. Transcript, page 2.

7. Transcript, page 4, lines 14–19. However, even though OTC stipulated that the Trust was irrevocable, the ALJ proceeded with the hearing and denied Estate's motion to summarily rule in

favor of the Estate on the issue of whether the Trust was revocable. The ALJ's Findings of Fact conclude that the Trust is irrevocable.

8. See, note 1.

¶ 19 Therefore, this Court will proceed to decide whether the Decedent possessed a general power of appointment or a contingent interest so that the value of the Trust should be included in his Estate for estate tax purposes.

### General Power of Appointment

¶ 20 The issue is whether Decedent possessed a "general power of appointment" by virtue of paragraph 6 of the Trust. The term is not specifically defined in Section 807(A)(9) in the Estate Tax Code. The "general" powers of appointment included in Section 807(A)(9) are those "exercisable in favor of the decedent, the estate of the decedent, creditors of the decedent, or creditors of the estate of the decedent." 68 O.S. Supp.2000, § 807(A)(9), as will be shown below, merely repeats the definition of a general power of appointment rather than announcing any special categories of general powers of appointment. Thus, it is necessary to understand what constitutes a power of appointment and then what makes the power "general" as opposed to non-general or special or limited.

¶ 21 To begin, this Court finds that no basis exists in the Oklahoma Estate Tax Code to consider that the concept of powers of appointment have any special meaning for tax purposes as opposed to the common law meaning of the concept as prescribed by statute, other than the foregoing restriction.[9] 60 O.S.1991, § 299.1. Therefore, the term "general power of appointment," as used in the Estate Tax Code, has the same definition as set forth in Restatement (Second) of Property §§ 11.1, 11.4.

█ ¶ 22 This Court adopts the definition of a power of appointment set forth in Restatement (Second) of Property set out below. This definition is derived from common law and is consistent with the intent of the Oklahoma Estate Tax Code to tax economic benefits and the privilege of transfer.

A power of appointment is the authority, other than as an incident of the beneficial

ownership of property, to designate recipients of beneficial interests in property.

Restatement (Second) of Property, Donative Transfers § 11.1.

█ ¶ 23 This is considered an all-inclusive definition. It includes all powers to determine who and to what extent beneficial interests may be received. *Id.* at Comment a. Under this definition the donor "must intend to create a power, the donor of the alleged power must indicate by whom the power is held, and must specify the property over which the power is to be exercised." *In re Estate of Lewis*, 738 P.2d 617, 619 (Utah 1987). Clearly, under this definition Decedent here created and possessed a power of appointment in his Trust, and this Court so rules. Moreover, Decedent is one of the persons listed in Section 807(A)(9).

¶ 24 However, it now becomes necessary to determine whether Decedent's power is a "general" power of appointment because the Estate Tax Code requires inclusion into the estate of only general powers of appointment.

¶ 25 As an indicator of "general" versus "non-general," or "limited," powers of appointment, both sides point to the United States Internal Revenue Code, the regulations promulgated under the Code, and federal case law. There are two reasons why that approach has limited useful purpose.

¶ 26 First, the Oklahoma Estate Tax Code does not contain the dichotomy between "general" powers and powers limited by a reasonably definite standard. Thus, the powers of appointment included in the Oklahoma statute are general powers by definition. No other kind of power of appointment is included in the Oklahoma statute.

¶ 27 Second, federal law directs one to refer to state law to ascertain whether a specific trust provision limits the power of appointment and thereby qualifies for exclusion pursuant to federal law under the federal scheme. Both sides here agree that under federal law a power of appointment limited

---

9. The common law lineage of powers dates back several centuries. In modern day, the use of powers became significant as a means to engage in tax planning, so that, in an overly simplified manner, one could "dispose" of property so it

would not be in the estate, yet keep the benefits by creative uses of powers. The tax law response was simply to include powers in the estate. *See generally Powell on Real Property*, §§ 385 et seq. (Matthew Bender 1991).

by a reasonably definite standard set out in the trust instrument may extend benefits to any beneficiary without causing the grantor to be treated as the owner for estate tax purposes. 26 U.S.C. § 2041(b)(1); IRS Regulation, 26 CFR § 20.2941–1(c)(2); *Brantingham v. U.S.*, 631 F.2d 542 (7th Cir.1980); *Estate of Sowell v. Commissioner*, 708 F.2d 1564 (10th Cir.1983).

¶ 28 The federal statute provides an exclusion from general powers of appointment:

(A) A power to consume, invade, or appropriate property for the benefit of the decedent *which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent* shall not be deemed a general power of appointment.

26 U.S.C. § 2041(b)(1)(A). (Emphasis added.)

¶ 29 The IRS regulation restates the statute and gives examples:

(2) Powers limited by an ascertainable standard.... A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's "support," "support in reasonable comfort," "maintenance in health and reasonable comfort," "support in his accustomed manner of living," "education, including college and professional education," "health," and "medical, dental, hospital and nursing expenses and expenses of invalidism." In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is re-

quired to exhaust his other income before the power can be exercised.

26 CFR § 20.2041–1(c)(2).

¶ 30 OTC has an uncomplicated position: The Trust here used the phrase *"necessary for the maintenance of health, comfort, and welfare of the Trustor,"* rather than the specific language of the Code and regulations, "needs for health, education, or support (or maintenance.)" Under OTC's view, the addition of the words "comfort and welfare" without any further limitation add two criteria which are specifically not deemed to set out a reasonably measurable standard.

¶ 31 The Federal case decisions do not draw such a fine line. In *Brantingham ·v. U.S.*, the Court had before it trust language allowing the widow beneficiary to "devote such of the corpus ... as in her judgment is necessary for her maintenance, comfort and happiness." [10] *In Estate of Sowell v. Commissioner*, the trust authorized distribution "in cases of emergency or illness." In *Funk v. Commissioner*, 185 F.2d 127 (3rd Cir. 1950), the trust permitted the income to be used for "needs."

¶ 32 In none of these cases did the Court feel constrained to limit the trust to the specific language of the Code or Regulations. However, in each case the Court looked to state law to ascertain whether the limiting language in fact established a standard. In other words, the meaning of the trust language was held to be a state law question, whereas the tax consequences of the state law interpretation present a federal question. *Vissering v. Commissioner*, 990 F.2d 578, 581 (10th Cir.1993); *Best v. United States*, 902 F.Supp. 1023, 1025 (D.Neb.1995). When state law construed the language to "constitute an ascertainable standard relating solely to decedent's health, education, support or maintenance" then such language qualified for exclusion from the definition of a general power of appointment. *Estate of Sowell*, 708 F.2d at 1567–68. When state law did not construe the language involved as a limited

---

10. The Internal Revenue Service declines to follow *Brantingham* but without discussion of the meaning and effect of the use of "necessary." Rev. Rul. 82–63, April 12, 1982, 1982–1 C.B. 135. On the other hand, "reasonable needs and comfort" in light of state law was ruled to be a reasonably ascertainable standard by the Internal Revenue Service in a non-precedential Advice Memorandum. T.A.M. 8210021, November 30, 1981, 1981 WL 175253.

power, then a general power of appointment was found to exist. *Lehman v. United States,* 448 F.2d 1318, 1320 (5th Cir.1971). In all cases, the federal courts declined to perform a rote comparison of the trust language to ascertain whether the language mimicked word for word the statute or regulation. *Vissering,* 990 F.2d at 581; *see Toledo Trust Co. v. United States,* 1987 WL 364077 (D.Ohio 1987).

¶ 33 Although the results of the majority of the federal decisions reach a conclusion which contradicts the conclusion reached by the ALJ and OTC, nevertheless it remains necessary to examine Oklahoma law to ascertain whether the language here qualifies as a limited power of appointment. At this juncture it is apparent that OTC and the ALJ erred as a matter of law in their respective approach to the issue by looking solely to words in federal statutes and regulations. Nevertheless, if OTC's Order disposing of the Estate's protest reached a correct result, albeit for the wrong reason, the Order will be affirmed. *See Cooper v. Parker Hughey,* 1995 OK 35, ¶ 28, 894 P.2d 1096, 1101.

¶ 34 Hence, the matter for decision is still whether the power of appointment established in paragraph 6 of the Trust is "general" or "non-general" under Section 807(A)(9). Only the "general" power will cause the Trust Estate to be included in the Estate for tax purposes.

¶ 35 Many authorities denominate powers as "general" or "special."[11] The Restatement uses the terms "general" and "non-general." The definition of "general" power of appointment is universally stated as a power exercisable in favor of anyone, including the donee, his or her estate, or his or her creditors or creditors of the estate. *In re Rowlands Estate,* 73 Ariz. 337, 241 P.2d 781, 784 (1952); *In re Estate of Worthley,* 535 A.2d 433, 435 (Me.1988). The language of the Oklahoma Estate Tax Code in Section 807(A)(9) parallels the definition of a "general" power of appointment set out in the Restatement (Second) of Property. The Restatement provides:

GENERAL POWER AND NON–GENERAL POWER

(1) A power of appointment is general if it is exercisable in favor of any one or more of the following: the donee of the power, the donee's creditors, the donee's estate, or the creditors of the donee's estate.

(2) Any other power of appointment is a non-general one.

Restatement (Second) of Property, Donative Transfers § 11.4.

¶ 36 Here, the power of appointment in the Trust may be exercised in favor of the Decedent, but not in favor of any of either his creditors, his estate's creditors, or his estate. In addition, the Trust *adds* two parties not listed in the Restatement or Section 807(A)(9), namely, the Children. Finally, the Trust circumscribes the reasons for which distributions may be made by the use of the word "necessary" and the phrase "in the sole discretion of the Trustees necessary for the maintenance of health, comfort, and welfare of the Trustor, and the heirs at law of the Trustor." Also, the exercise of the power is only accomplished and must be exercised by a majority of the three Trustees and not by Decedent Trustee acting alone.

¶ 37 The final result rests upon whether the additions and language of paragraph 6 of the Trust convert the power of appointment from a general power to a non-general or special power.

¶ 38 The Washington Supreme Court has held that a "power" of appointment is "general" if it is capable of being exercised by the donee in favor of anyone including himself without restriction as to estate or interest appointed, and it is "special" if its exercise is restricted to particular persons or a particular class of persons, or if it can be exercised for only certain named purposes or under certain conditions. *In re Lidston's Estate,* 32 Wash.2d 408, 202 P.2d 259 (Wash.1949), directing executor to dispose of property after making specific bequests. Although the rule stated in *Lidston's Estate* is broader than the underlying facts of the case, such rule, ap-

---

**11.** In one context, the Oklahoma Statutes uses the terms "general" and "special." 60 O.S.1991, § 43.

plied here, would require a finding that the Trust's paragraph 6 creates a non-general power of appointment.

¶ 39 The Restatement focuses upon the classes of persons who receive the benefit from the exercise of the power of appointment to decide whether a power is general or non-general. Thus, according to the Restatement Comments, the fact that the power may be exercised jointly with another will not transform the general power into a non-general power even though such provision carries with it obvious legal significance.[12] The Opinions of the following cases also look to the classes of persons entitled to benefit. *Dickinson v. Wilmington Trust Co.*, 734 A.2d 605 (Del.1999), *aff.* 734 A.2d 642; *Pinzino v. Vogel*, 98 Ill.App.3d 330, 53 Ill.Dec. 736, 424 N.E.2d 371, 373 (1981) (general unless appointees are limited); *In re Estate of Trainer*, 123 Wis.2d 102, 365 N.W.2d 893, 896 (1985).

¶ 40 Decedent's Trust presents a hybrid case when considering application of Section 807(A)(9). The Trust has some aspect of a general power, but the Trust's conditions and addition of additional beneficiaries add an element of uncertainty. This uncertainty is compounded by the fact that OTC has argued it would deem the Trust to possess a non-general power if it incorporated certain federal language verbatim. Thus, OTC's interpretation is that Section 807(A)(9) implicitly recognizes that such thing as a non-general power of appointment exists. However, Section 807(A)(9) acknowledges only general powers according to the generally accepted definition of a general power. A literal interpretation of Section 807(A)(9) concludes that if a power of appointment is not a general power of appointment, according to the generally accepted definitions, then it is not a general power of appointment for purposes of Section 807(A)(9).

¶ 41 Thus, this Court finds that the statute, Section 807(A)(9), suffers from uncertainty. In such cases, the statute is construed in favor of the taxpayer. *Neer v. Oklahoma Tax Comm'n*, 1999 OK 41, ¶ 16, 982 P.2d 1071, 1078; *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n*, 1979 OK 62, ¶ 5, 594 P.2d 1210, 1212. Here, this interpretation means that the power of appointment is a non-general one if the language creating the power of appointment makes the power exercisable in favor of *any one other than or in addition to* the donee of the power, the donee's creditors, the donee's estate, or the creditors of the donee's estate.

¶ 42 The OTC and the ALJ, therefore, erred as a matter of law in the determination that the value of the Decedent's Trust was included in Decedent's Estate pursuant to Section 807(A)(9).

### Estate as Contingent Remainderman

### Status of the Ruling

¶ 43 The Estate understandably questions whether the contingency alternative of Section 807(A)(1) formed a part of the ALJ's determination, and thus part of the OTC's Order. The ALJ made findings concerning heirs and the Estate being a contingent remainderman by operation of law, but the ALJ's conclusions focused upon the power of appointment question as a basis for denial of the protest. The ruling on the contingency issue, if addressed at all as a basis for denial of the protest, can only be found in the ALJ's general statement that an "assessment will be sustained as long as there is statutory authority therefor and substantial evidence in support thereof."[13] Despite the oblique nature of the ruling, this Court will review

---

12. The Restatement Comments state:

General power of appointment. A general power of appointment gives the donee of the power the authority to confer on himself or herself the full benefit of the appointive assets to the exclusion of others. If this authority must be exercised jointly with another, even though the joint donee may have an interest in the appointive assets adverse to the exercise of the power in favor of the donee who can be benefitted by the exercise of the power, that fact does not prevent the power from being a general one. It may, however, result in some different legal consequences than those that apply when the donee, acting alone, can exercise the general power of appointment. A power that is exercisable in favor of the donee if a specified standard is met is a general power of appointment that is presently exercisable only when the standard is met.
Restatement (Second) of Property, § 11.4, Comment a.

13. ALJ *Conclusions of Law*, paragraph 5, record 141.

the OTC Order as including the contingency provision of Section 807(A)(1) as a basis for upholding the assessment and denial of the protest.

### Merits of the Ruling

¶ 44 The question here is not whether Decedent's estate may hypothetically receive the property, but rather whether by operation of law Decedent has a contingent remainder. The tax code statute is couched in broadest terms. It states:

> 1. The value, at the time of death of the decedent ... of all property ... in which the decedent *had an interest,* whether vested or *contingent,* ... and any interest therein or income therefrom, which shall pass in possession or enjoyment, present or future, by distribution, by statute, descent, devise, bequest, grant, deed, bargain, sale, gift or contract, to any person ... in trust or otherwise, by testamentary disposition or by laws of inheritance or succession of this or any other state....

68 O.S. Supp.2000, § 807(A)(1).[14] (Emphasis added.)

14. There is no contention by OTC that Decedent might receive the property other than by virtue of his children dying without heirs. Thus, for example, Decedent is not a contingent beneficiary, under the record here, of his Children's Wills or any other documents which might be construed to effect a transfer upon some contingency. Likewise, OTC does not assert that Decedent had a vested interest in the property or a reversionary interest in the property. A reversionary interest is defined in 60 O.S.1991, § 29, and Decedent's transfer to the Trust was complete as to his interest.

15. The nature and description of the property, and its value, do not appear to be in dispute. The main body of the Trust document does not list any property, nor is there a list by reference to a schedule of attached property. Exhibit "A" is a plan of distribution of certain property, real and personal, upon termination of the Trust. The legal description of the real property located in the town of Hennessey, Oklahoma, is incomplete and no specific personal property is identified.

16. See note 12. The record at page 94 contains a quitclaim deed of surface and mineral property in Kingfisher County, Oklahoma, executed by Decedent as grantor in favor of Trust as grantee. The Exhibit "A" to the Trust references property in Hennessy, Oklahoma, and generally refers to personal property, but neither of these are shown to have been transferred to the Trust. Decedent

¶ 45 The inquiry, under the tax code, is whether Decedent "had an interest, whether vested or contingent" in the property that OTC seeks to include in his estate.[15] Under the record here, it may be inferred that the property in issue consists of surface and mineral interests in Kingfisher County, Oklahoma.[16] Thus, the initial question for review is whether Decedent had a contingent remainder interest, by operation of the law applicable to trusts, in those properties he irrevocably conveyed to the Trust and reported for federal gift tax purposes.[17] In other words, is Decedent ultimately entitled to the Trust property by operation of law applicable to trusts as a "remainderman" or in some other capacity? [18]

¶ 46 The Trust property goes to the Children upon termination of the Trust. If the Children, or either of them, had not survived then their respective heirs would receive their respective shares by representation.[19] Decedent's Children and grandchildren were in being when the Trust was executed. Estate argues that the actual facts are that

reported the transfer of the property described in the quitclaim deed for federal gift tax and at a value of $280,400.00. The ALJ Order refers to the gift tax return (but at a value of $260,400.00) in reference to the property. Record, page 139. The OTC assessment included in the estate the surface and mineral interests listed in the quitclaim deed. Record, p. 1 at 4–5.

17. The laws of descent and distribution do not assist at this point because neither the Children nor Decedent have title to the property under the OTC scenario and Decedent does not "inherit" from the Trust entity. 84 O.S. Supp.2000, §§ 212, 213. In any event, under the record here, the evidence does not foreclose other possible inheritors of the property, such as collateral heirs, but presumably OTC assumes that no collateral heirs or surviving spouse exists.

18. Section 175.3(J), a part of the Oklahoma Trust Code, defines "remainderman" as:

> 'Remainderman' means the person ultimately entitled to the principal, whether named or designated by the terms of the transaction by which the principal was established or determined by operation of law.

19. Inheritance by representation means that the descendants of a deceased heir take the same share of an estate that their parents would have taken if living. 84 O.S.1991, § 228.

Decedent was survived by his Children and, moreover, due to the numbers of grandchildren and great-grandchildren, the likelihood of reversion to the Estate was too remote to consider. Thus, the Estate maintains that the ruling is purely hypothetical, that Decedent fully divested himself of the property, and that he had no intention of creating any remainder interest.

¶ 47 Under the scenario sponsored by OTC, as set out in paragraph 6(i) of the ALJ's Findings of Fact, the assumption is that if the Children die prior to Trust distribution, each without heirs, then the Trust property *must* go to Decedent's *Estate*.[20] This scenario also necessarily assumes that Children have not been replaced as Trustees. At the same time, OTC stipulates that Decedent created an irrevocable Trust and OTC does not maintain that Decedent has any reversionary interest flowing from his quitclaim conveyance of the subject property to the Trust. Consequently, everyone who might take the Trust property is deceased under the OTC scenario.[21]

■ ¶ 48 Here, OTC stipulated that the Trust is irrevocable. Moreover, Decedent's quitclaim deed conveyed all of his right, title, and interest in the property to the Trust. 16 O.S.1991, § 18. An executed, statutory quitclaim deed conveys every interest of the grantor, including vested and possible future interests. *Bonebrake v. McNeill,* 1971 OK 146, 491 P.2d 269. Thus, no estate remained with Decedent. 60 O.S.1991, § 175.44.

¶ 49 Neither the ALJ Findings and Conclusions nor the OTC's Brief here offer any legal authority for the conclusion that the trust property of an irrevocable trust *automatically* reverts to the creator of the trust when that person has conveyed all of his or her right, title, and interest in the property to the trust, so some rule of law must intervene to cause the property to revert. But, under the OTC scenario, the return of the property to Decedent's Estate must occur by operation of law.

¶ 50 The general rule is that if a settler gratuitously transfers property to a trust and the trust terminates without exhaustion of the trust property, then the trustee holds the remaining property upon a resulting trust for the benefit of the settlor, settlor's heirs, or settlor's estate, *unless* the settlor has proved that such would not occur. *Colbo v. Buyer,* 235 Ind. 518, 134 N.E.2d 45, 51 (1956); *White v. Fleet Bank of Maine,* 739 A.2d 373 (Me. 1999); *First National Bank in Mitchell v. Daggett,* 242 Neb. 734, 497 N.W.2d 358, 364 (1993); *Allen v. Wessman,* 542 N.W.2d 748, 753 (N.D.1996); *Schenerlein v. Schenerlein,* 197 N.E.2d 231, 232 (Ohio Ct.App.1963); *Rainey v. Rainey,* 795 S.W.2d 139, 149–50 (Tenn.Ct.App.1990); *Roberts v. Squyres,* 4 S.W.3d 485, 489 (Tex.Ct.App.1999); Restatement (Second) of Trusts § 430; *see Phillips v. Estate of Holzmann,* 740 So.2d 1, 3 (Fla. Dist.Ct.App.1998); *Theodore Short Trust v. Fuller,* 7 S.W.3d 482, 493 (Mo.Ct.App.1999).[22]

¶ 51 Under the OTC's scenario, the Estate is the only category that can benefit from the application of the resulting trust rule. However, the interest of the Estate is to avoid the resulting trust rule so as to avoid taxation.

■ ¶ 52 The analysis here is further refined at this point to ascertain whether Estate has shown that Decedent has manifested an intent to avoid the resulting trust rule. As discussed in the beginning of this analysis, the Estate's case before the ALJ did not address the OTC's new issues with any factual presentation. The Estate's arguments here are essentially arguments of law. Estate's arguments concerning the remoteness of the possibility of OTC's hypothetical occurring fail to overcome the broad language of

---

20. The Trust Code's provision for distribution to lineal heirs of a beneficiary in case a beneficiary dies before distribution will not directly resolve the issue under the scenario presented as there would be no lineal heirs. 60 O.S. Supp.2000, § 175.56.

21. It must be observed that with the multi-generational nature of the family, their ages and Decedents' descendants now existing into the great grandchildren stage, a total demise of all descendants of his deceased at this time exceeds the bounds of rational human experience, absent war.

22. The rule is derived from equity and to prevent unjust enrichment or a windfall. *Nolana Dev. Assoc. v. Corsi,* 682 S.W.2d 246, 250 (Tex.1984). Moreover, the rule is consistent with the disposition of trust property prescribed in 60 O.S. Supp. 2000, § 175.56. Unfortunately, Section 175.56 does not extend its coverage to the OTC hypothetical.

the Estate Tax Code which reaches out to any contingent interest without regard to remoteness.

¶ 53 OTC's position merely postulates a set of circumstances. As shown above, these hypothetical circumstances establish a resulting trust in favor of Decedent's Estate absent some evidence rebutting the existence of the resulting trust.

¶ 54 Thus, the question now is whether the existence of a resulting trust has been rebutted in this record. The Restatement (Second) of Trusts § 431, Rebutting the Resulting Trust, Comment c provides helpful guidelines in this analysis:

> Manifestation of intention that trustee may keep the surplus. If the transferor properly manifested an intention that if there should be a surplus remaining after the performance of the trust the trustee should keep the surplus, the trustee holds the surplus free of trust and no resulting trust arises. Whether the transferor manifested such an intention is a question of interpretation. Among the circumstances which are or may be of importance in determining whether or not he manifested such an intention are: (1) the language used in the trust instrument; (2) the relationship between the transferor and the trustee; (3) whether the trustee is an individual or a corporation, and if a corporation whether it is a charitable corporation; (4) the certainty or likelihood that there would be a surplus; (5) whether the trust is created inter vivos or by will; (6) whether, if the trust is created by will and there is no disposition of the residue, the testator has made other provision for his heir or next of kin; (7) whether, if the residue is left in trust, the testator has made other provision for the trustee; (8) whether, if the trust is created inter vivos, the settlor has reserved for himself a part of the beneficial interest.

¶ 55 OTC placed of record certain documents including the Trust document and Decedent's rendering of the transfer to the Trust for Federal Gift Tax purposes. The Trust document clearly expresses Decedent's intent that the Trust property go to the natural objects of his bounty, his Children or their heirs. The rendering for Gift Tax is consistent with an intention that the property

not return. The Estate did not put on any other evidence in the evidentiary hearing before the ALJ to rebut the application of the general rule that a resulting trust arises.

¶ 56 Consequently, the only facts of record are consistent with an intention on the part of Decedent that a resulting trust does not arise. Under the Restatement Comments, the fact that Decedent was a beneficiary of the Trust did not automatically raise an inference that a resulting trust should arise, given the disposition of the property upon his death. Restatement (Second) of Trusts § 431, *Rebutting the Resulting Trust*, Comments a and i.

¶ 57 Therefore, this Court holds that where an owner of property gratuitously transfers property to a trust and the trust terminates without exhaustion of the trust property, then the trustee holds the remaining property upon a resulting trust for the benefit of the settlor, settlor's heirs, or settlor's estate, *unless* the settlor has proved that such would not occur. The resulting trust does not arise automatically because the inquiry must examine the express manifestations and circumstantial facts to ascertain whether the settler intended that a resulting trust would not arise.

¶ 58 In the case now reviewed by this Court, the only evidence concerning Decedent's intent consists of evidence consistent with an intent that a resulting trust not arise. Thus, the ALJ and the OTC erred in including the value of the Trust in the Estate on the basis that Decedent possessed a contingent interest in the property.

¶ 59 Moreover, this Court notes that under the OTC scenario, assuming that the facts would support the existence of a resulting trust, the fact no one, near relative or remote, exists to receive the Trust corpus brings into play a special application of the general rule pertaining to resulting trusts. In such cases, the trustee holds the trust property in a resulting trust for the State. Restatement (Second) of Trusts § 430, Comment e. Thus, under OTC's hypothetical, the resulting trust puts the balance of the property into the Estate, but the Estate has no place to disburse the property for lack of heirs. Therefore, escheat occurs. 84 O.S. Supp.2000, § 213(A) Ninth. Property sub-

ject to escheat is not subject to estate tax. 68 O.S.1991, § 802. In such cases an estate tax would defeat the specific purpose of the escheat statute's provision for directing the money specifically to the common schools because the estate tax funds go into the general revenue pool of the State. Thus, even if the evidence of record had failed to rebut the existence of a resulting trust, there would be no estate tax consequences.

¶ 60 Therefore, the OTC Order and the ALJ Findings and Conclusions are not supported by the evidence of record and err in ignoring the provisions for escheat. Moreover, the result reached here is consistent with the clear intent of the Decedent, expressed in Exhibit "A" of his valid, irrevocable Trust, that his Children, or their heirs, receive the Trust property when, as here, the facts are that such persons are in being now, as well as when the Trust was created.

## CONCLUSION

¶ 61 The Trust here does not contain a general power of appointment by definition. Next, the termination of this Trust, under the OTC scenario without any one to take the property, does not automatically return the property to Decedent's Estate by virtue of a resulting trust. Here, the only evidence in the record manifests an intent on the part of Settlor that the property not return. Moreover, OTC's scenario results in escheat to the State and the value of the Trust under such circumstances is not included in the Estate for estate tax purposes.

¶ 62 The OTC, and the ALJ, erred as a matter of law in denying the Estate's protest and the decision is contrary to the evidence of record. Therefore, the Order of the Oklahoma Tax Commission denying the protest of the Estate of Ernest L. Sieber, deceased, is reversed and remanded with directions to sustain the protest.

¶ 63 REVERSED AND REMANDED WITH INSTRUCTIONS.

¶ 64 STUBBLEFIELD, P.J., and TAYLOR, J., concur.